New-York, May, 1840.—Lincoln v. Schenectady and Saratoga R. R. Co.

can do *is to bring to the discharge of their duties a careful    [ *435 ]
and diligent consideration of the particular case, a knowledge
and experience of the general condition and business affairs of mankind, to
which all are more or less subject, a sound and enlightened judgment, and
honest desire to arrive at truth and justice between the parties.  No more
can be expected ; no less justified.  The result will usually be an approxi-
mation to reasonable indemnity, as near as the imperfection of human tribu-
nals will admit.

I am also of opinion that some of the questions put in respect to the effect
of the injury to the limb were pushed into consequences and conjectures too
remote for the subject of judicial investigation.  The present and probable
future condition of it were proper matters for inquiry ; but the consequence
of a hypothetical second fracture were obviously beyond the range of it, and
calculated to draw the minds of the jury into fanciful conjectures.

The charge as to expenses beyond taxable costs and counsel fees in con-
ducting the suit, as a particular item of damages to be taken into the ac-
count, I am also inclined to think was erroneous.  These have been fixed
by law, which is as applicable to cases sounding in damages as in debt.
The point has been expressly adjudged in Massachusetts, 21 *Pick.* 382, and
we think founded on principle.

Upon the above grounds we are of opinion a new trial should be granted,
costs to abide the event.

------◄●◄─►●►------

## TOWNSEND and others *vs.* CORNING.

A *covenant* for the sale of land, as well as a *deed* passing *an interest* in land, where the contract
is made by *an attorney in fact*, to be valid must be executed *in the name of the principal by A.
B. his attorney ;* if the attorney affix *only his own name* the covenant is *void*, although in the
body of the instrument it be stated that it is *the agreement of the principal*, by A. B. his at-
torney, that *the principal covenants*, &c. and in the *in testimonium* clause it be alleged *that A.
B. as the attorney of the principal* hath set his hand and seal.

The *principals* not being bound, the other party is discharged ; and no act *subse-    [ *436 ]
quently done by the *covenantors* can give validity to the covenant without the assent
of the *covenantee.*

It is conceded, however, that when the *agent* as such does an act *in pais*, though *in his own name*,
or enters into a commercial or other contract *not under seal*, without subscribing the name of
the principal, the latter is bound by the act of his agent.*

EXECUTION of a sealed contract.  The plaintiffs sued the defendant on a
sealed contract, whereby they covenanted to sell and convey to him certain
lots of land, in the village of *Syracuse*, for the sum of $11,000, and on
payment of that sum to execute to him a good and sufficient deed of the

* See, as to this last principle, *Evans* v. *Wells and Spring*, 22 *Wendell*, 324 *et seq.*

premises, subject to the conditions and exceptions contained in the original letters patent, and to all taxes assessed or charged thereon, subsequent to the date of the contract. The defendant covenanted to pay the stipulated sum in five annual instalments, the first instalment in two years) with *interest annually*, and to enclose the lots within six months from the date of the contract, by a good board fence, and in default of payment of principal or interest, giving to the plaintiffs *the right to re-enter* and sell the premises. The contract commences in these terms: " Article of agreement made 18th July, 1836, between Isaiah Townsend and John Townsend, of the city of Albany, James McBride, of the city of New-York, Gideon Hawley, James King and Augustus James, trustees and executors of William James deceased, also of the city of Albany, *by Harvey Baldwin, of the village of Syracuse, their attorney* of the first part, and Richard S. Corning of the second part, witnesseth, the said *parties of the first part*, for and in consideration, &c., do covenant and agree, &c.;" and closes in these words: " In witness whereof the said *Harvey Baldwin, as attorney of the parties of the first part*, and the said party of the second part, have hereunto set their hands and seals, the day and year first above written." (Signed) Harvey Baldwin, (L. S.) Richard S. Corning, (L. S.) On the back of the contract was an endorsement in these words: " I hereby countersign and approve [ *437 ] *the within contract. In witness whereof I have hereunto set my hand and seal, this 23d day of March, 1838. (Signed) John Townsend, (L. S.)

In January, 1839, the parties of the first part to the above contract, (as described therein,) stating themselves to be *survivors of Isaiaah Townsend*, commenced this suit setting forth the contract and alleging as breaches the non-payment of *interest* falling due in 1837 and 1838, and non-payment of the first instalment of the *principal*. The defendant craved *oyer* of the contract, and set it forth; and also set forth the endorsement upon the contract as above stated and then demurred to the declaration.

*A. Taber*, for the defendant, insisted that the contract, in the manner it was executed, was not binding upon the plaintiffs, and was therefore void. It was executed by the attorney and not by his principals. To have made it the act of the principals, their names and their seals should have been used, or at least their names should have been placed by the attorney opposite the seal used by him. The deed is no more the deed of the principals, (*though the character of agent appear throughout the deed,*) than if it did not appear at all, unless it be executed in the names of the principals —and in support of this position, *cited Moore's R. p.* 70, *pl.* 191; *Combe's case,* 9 *Co.* 75; 2 *Ld. Raym.* 1418; 2 *Str.* 705, *S. C.*; 6 *Johns. R.* 94; 7 *Cowen,* 453; 10 *Wendell,* 87. He also referred to *Professor* HOFFMAN's opinion in a case found in " The American Jurist," published in Boston, No. 5, January, 1830, *p.* 71, *et seq.* as presenting a review

of the cases upon this question. He also insisted that the covenants of the defendant were void, for the want of mutuality ; the contract being unfinished in its form and execution, it was of course inoperative.

*J. C. Spencer,* for the plaintiffs. Was the contract so executed as to bind the plaintiffs ? It purports on its face to be the contract of the plaintiffs made with a third person, by their authorized agent, and the agent, *as attorney for the plaintiffs,* as expressed in the *in testimonium* clause, set his hand and seal to it, and the defendant affixed his *hand [ *438 ] and seal. What is the object of affixing the signatures of parties to a contract, other than to evidence the terms of the agreement. Then who can doubt that this was the contract of the *principals,* and not the contract of the *agent ?* Had not a *seal* been affixed to the name of the attorney, no question could have been raised as to the binding effect of the contract; and can it be that the idle circumstance of affixing a *seal,* not required by any rule of law to give effect to the contract, shall wholly destroy it ? Where an act may be done without seal, it will be so construed by the courts as to give it effect, if possible. *Story on Agency,* 143. Formerly the rule was rigid, that a contract under seal entered into by an *agent,* to be binding upon the *principal,* must on its face puport to have been made *by the principal,* and to have been *executed in his name ;* but such is no longer the case. As long since as 1802, it was held in *Wilks and another* v. *Back,* 2 *East,* 142, that a bond of submission executed by *Wilks,* as attorney for one *Brown,* his partner, in this form "For James Brown Mathias Wilks," [L. S.] was a good execution, binding upon Brown. It cannot be said that in that case the bond was executed by Brown, or *in his name.* The words " For James Brown," merely import a declaration, and nothing else, that *Wilks* set his own name and seal to the bond *for* or *as the attorney* of Brown, and why should not a similar declaration in the *testimonium* clause, receive a like interpretation ? So asks Judge Story, in his work on *Agency, p.* 143. *Combe's case,* 9 *Co.* 75. which had been cited to show that the execution of . the contract in this case is not good, decides no such thing, but directly the contrary. There the attorney made the surrender *in his own name,* showing the letter of attorney under which he acted. What is said in that case relative to leases made by agents, is a mere *dictum,* and consequently not authority. In *Frontin* v. *Small,* 2 *Lord Raym.* 1418, *and* 2 *Strange,* 705, *S. C.* cited on the other side, it was held that a lease made by the plaintiff was *void to pass the estate,* she having made the lease in her own name, instead of that of her principal, and that consequently the covenant of the defendant to pay rent was void—the court adding, " espe- [ *439 ] cially in this case, where the covenant is not *with the plaintiff,* nor the rent *reserved to her,*" the covenant being to pay the principal. In that case, it will be observed, the attorney undertook to pass *an interest in land,*

and to bring a suit *in her own name*, on a covenant to pay rent to another. In the present case, no conveyance of an interest in land *præsenti* is made, but a mere contract entered into for a conveyance *in futuro*, and the covenant is to pay not the attorney, but the principals. Of the same character is the case of *Bogart* v. *De Bussey*, 1 *Johns. R.* 94, where the *attorney* brought the action *in his own name*. Allowing, however, that where *an interest in land* is to be conveyed, the *name of the principal* must be signed by the agent, and the seal must be appropriated by the agent for him, the rule does not apply to a contract like this in question, where a mere act is to be done ; in which cases it is held even in *Combe's case*, that it may be stated to be done for and in behalf of the principal. So in *Paley on Agency*, 153, 154, it is said, that when the act is ministerial it is sufficiently in the name of the principal if it appear to be done on his behalf ; but where an interest is to be passed, it must be both formally and substantially in the name and on the behalf of the principal. Professor *Hoffman* also observes : " It is to be borne in mind that the rule in question is applicable only to instruments known to the common law : as deeds of conveyance, bonds, &c." " A *bond* is a debt ; it is *debitum in præsenti, solvendum in futuro ;*" it " is a *species of conveyance* of a *personal thing*, as a *deed* or *indenture* is a conveyance of *land*, or other thing real." *American Jurist*, No. 5, *p.* 78. Here there was no conveyance of any thing whatever ; the defendant had a *license* to enter upon the premises sold, but *no interest in the land* was conveyed to him.

*D. Cady* was heard in reply.

*By the Court*, BRONSON, J. It was admitted on the argument, that Baldwin, the attorney, is not bound by the deed. Although he subscribed his name and affixed his *seal, there are no words of contract on his part ; and whether he intended to bind his principals or not, it is apparent from the whole instrument that he did not intend to contract for himself. *Catlin* v. *Ware* 9 *Mass. R.* 218.

II. This is not the deed of the plaintiffs and Isaiah Townsend ; for although they are named in it with the apparent intention of becoming parties, they have executed the instrument, either in person or by attorney. Their names and seals at the end are not only wanting, but as if to put the matter beyond all doubt, the *in testimonium* clause states, that *Baldwin* of the one part, and *Corning* of the other, have set *their* hands and seals. It is true, that Baldwin is described in the contract as *attorney*, but it was nevertheless *his* hand and seal, and not the hands and seals of the *principals*, which was affixed to the deed. Although the principal will sometimes be bound where the agent, as such, does an act *in pais*, though in his own name, or makes a commercial or other contract not under seal, without sub-

scribing the name of the principal; yet the doctrine is well settled, in relation to *solemn instruments under seal,* that the principal will only be bound where he is, both in form and substance, the contracting party. It must be *his* deed. If it be the deed of the agent only, it will neither pass the title of the principal, nor bind him as a covenantor.

The earliest adjudged case I have met with, going directly to the point in question, is reported in *Moore, p.* 70, *pl.* 191. The king had, by letters patent, authorized his surveyor to make leases; and the surveyor made a lease, commencing thus: " This indenture made between *our lord the king* of the one part, and J. S. of the other part, witnesseth." Here, as in the case at bar, the principal was properly named in the instrument as the contracting party. But the deed concluded as follows: " In testimony whereof, the *surveyor* hath hereunto set *his* seal;" and the lease was held to be void. The court said, the surveyor should not have put his own seal to the lease, but the seal of the king, because it was not a lease from the king without his seal: he should say, the king, by A. B., hath affixed his seal. This was in 6 *Elizabeth.* The same question was presented more
*than a century before, on a special verdict, in the case of *Green-* [ *441 ]
*field* v. *Strech, Dyer,* 132, but no judgment seems to have been
rendered. *Combe's case,* 9 *Coke,* 76, is generally regarded as the leading authority on this question. The second resolution in that case, was " that when any has authority, as attorney, to do any act, he ought to do it *in his name who gives the authority,* for he appoints the attorney to be in his place, and to represent his person; and, therefore, the attorney *cannot do it in his own name,* nor as his proper act, but *in the name, and as the act* of him who gives the authority." The same rule is laid down in *Bac. Abr. Leases,* § 10; where it is said, that the attorney only has authority " to supply the absence of his master *by standing in his stead,* which he can no otherwise perform than by using his name, and making them [leases] *just in the same manner and style as his master would do if he were present;* for if he should make them in his own name, though he added also, by virtue of the letter of attorney to him made for that purpose, yet such' leases seem to be void." As this doctrine has not been departed from, I shall content myself with barely referring to some of the cases where it has been recognized and enforced. *Frontin* v. *Small,* 2 *Ld. Raym.* 1418, *and* 2 *Strange,* 705, *S. C. Reynold* v. *Kingman, Cro. Eliz.* 115. *Kenyon, Ch. J. in White* v. *Cuyler,* 6 *T. R.* 176. *Wilks* v. *Back,* 2 *East,* 142. *Bogart* v. *De Bussy,* 6 *Johns. R.* 94. *Stone* v. *Wood,* 7 *Cowen,* 453. *Spencer* v. *Field,* 10 *Wendell,* 87. *Wells* v. *Evans,* 20 *id.* 251. *Fowler* v. *Shearer,* 7 *Mass. R.* 14. *Elwell* v. *Shaw,* 16 *id.* 42, *and* 1 *Greenl.* 339, *S. C. Lutz* v. *Linthicum,* 8 *Peters,* 165. The most distinguished elementary writers lay down the same doctrine. 2 *Kent,* 631. *Story on Agency,* 137. It seemed to be supposed that a different rule was laid down in *Wilks* v. *Back,* 2 *East,* 142;

but as I understand that case, it fully recognizes the doctrine of the other cases. The question was on the form of executing a bond of submission, where the intention was to bind both Wilks and Brown; and Wilks was to execute for himself, and as attorney for Brown. Wilks first sign- [ *442 ] ed and sealed for himself, and then added, "*for* James *Brown, Mathias Wilks," with a second seal. Although the better form would have been to sign thus: " James Brown, *by* Mathias Wilks, his attorney," the court held it a good execution of the deed for, and in the, name of the principal. Instead of departing from the old rule, they expressly recognize the doctrine that the act done, must be the act of the principal, and not of the attorney.

In several of the cases to which I have referred, the attorney, after describing himself as such, or setting out his authority, has *himself* granted or agreed, instead of framing the instrument, as has been properly done in this case, so as to make the *principal* grant or agree. But it is not enough that the body of the instrument was drawn in the proper form. It required to be signed and sealed before it could become the deed of any one ; and the signature and seal of one man, could not make it the deed of another.

It is said that this is a technical rule, and should yield to the plain intent of the parties. It is very far from being clear in this case that Baldwin intended to bind his principals. After naming the plaintiffs as contracting parties in the body of the instrument, the attorney was careful, in the conclusion, not only to execute, but to say that he executed for himself only. This fact, taken in connection with the subsequent ratification by *John Townsend*, goes far to prove that the attorney did not intend to bind his principals. It looks very much as though Baldwin, either from a doubt of his authority, or as a matter of prudence, meant to refer it to his principals to decide for themselves whether it should be their contract.

But waiving this consideration, and assuming that Baldwin meant to bind his principals, his intention can only govern when it has been manifested in the forms prescribed by law. It is not enough that a man intends to do a legal act, unless he uses the legal means for accomplishing his object. A man may intend to alien his lands without writing, or to pass a fee simple interest without deed, but his intention will fail for want of legal execution. The law is full of just such technical rules as that which we have been considering—rules which require parties to act in a particular man- [ *443 ] ner, *and defeat their purpose when they neglect the forms and solemnities prescribed by law.

There can be no great hardship in applying the rule in this case, for the plaintiffs have got their land, and can lose nothing more than a good bargain. But the rule has been applied, as all the rules of law should be, without regard to the consequences which may follow. I will only refer to a single case. *Elwell* v. *Shaw*, 16 *Mass. R.* 42, and 1 *Greenl.* 339, *S. C.*

New-York, May, 1840.—Townsend v. Corning.

The attorney, who had authority to sell and convey the demandant's lands, made a deed, by which, *after reciting the power*, he granted, *by virtue of it*, to the defendant and another; and yet the demandant recovered the land, on the ground that the attorney had not properly executed his authority—it was the deed of the attorney, and not of the principal. The intention of the parties was apparent, and the court said, they had examined the question " with a strong wish to discover some ground which would authorize a decision according to the apparent equity of the case ;" but they could discover no such ground. After referring to the cases they say, " the current of authorities being thus strong, we must remember that *stare decisis* is a rule of no inconsiderable importance, if we wish to preserve the stability of judicial decisions ; and to relieve the law, as much as possible, from the reproach of uncertainty, which has so often been urged against it." When the case afterwards came before the supreme court of *Maine*, they felt themselves bound by the same considerations.

III. The defendant is not bound by the alleged contract. Although he signed and sealed, the execution of the instrument was not completed, and it is not his deed. What are the facts when taken in connection with the legal principles already considered ? A writing *inter partes* is prepared, by which one party is to covenant for the payment of money, and the other for the conveyance of lands—each of these mutual covenants being the consideration for the other. One party sits down and executes the deed ; but the other stops short, and for some cause—no matter what—does not execute the instrument. It is impossible, I think, to maintain, that the party who has refused or neglected to bind *himself, can set up      [ *444 ] the instrument as a binding contract against the other party.

There was, I think, a condition, implied from the nature of the transaction, that the signing of one party should go for nothing, unless the other signed also.

But whether I have assigned the proper reason for the rule or not, the conclusion to which I have arrived, that the party who signs cannot be bound, where the execution is thus incomplete, is not only in accordance with the justice of the case, but is well supported by authority. All of the cases agree in the general doctrine that the deed is void ; and *Frontin* v. *Small*, 2 *Ld. Raym.* 1418, and 1 *Strange*, 705, goes directly to the point in question. The attorney, in her own name made a lease to the defendant, reserving rent, which the defendant on his part covenanted to pay. In an action on the covenant, for rent in arrear, it was averred that the defendant entered and enjoyed the property. *Reeve*, who argued for the plaintiff, admitted that the lease was void because it had not been executed by the principal, but he insisted that covenant might be maintained on the defendant's agreement ; and he said, it was very hard that the defendant should enjoy the house as he did, and not be forced to pay the rent. But the court held

the covenant, as well as the demise, void, and gave judgment for the defendant. This decision has been recognized as good law in all the subsequent cases. I will only refer to two in this court, *Bogart* v. *De Bussy*, 6 *Johns. R.* 94, and *Spencer* v. *Field*, 10 *Wendell*, 87. The distinction taken in the last case in favor of an action by another plaintiff, whether well or ill founded, does not touch the present question.

I conclude, therefore, that this instrument was void, and that neither of the parties was bound by it.

IV. If the instrument was void at the time, nothing which has since happened can make it the deed of the defendant. John Townsend, after waiting nearly two years, endorsed his approval upon the contract. If such an act by all of the vendors could be of any importance, it is sufficient to remark, that the other five have not signified their approval to this day.

[ *445 ] *But it is said, that the plaintiffs have affirmed the contract by bringing this action. It is one answer to that argument, that neither Isaiah Townsend, who is dead, nor his heirs at law, in whom his share of the title to the land is now vested, are parties to this action. They have not, therefore, affirmed the contract. But if all the vendors had been alive and had joined in the action, it could not alter the case. The mere act of setting up the contract and claiming a benefit under it, would not make it their deed, or bind them as covenantors, to convey the land. The vendee would, perhaps, have a remedy in chancery on payment of the money : but that was not the arrangement contemplated by the parties. The defendant has never consented to bind himself by a covenant to pay the money, without receiving a covenant for the conveyance of the land. He was to have a contract which could be enforced at law as well as in equity.

But there is another, and, I think, a conclusive answer to the whole argument about the subsequent ratification of the vendors. Let us make the case much stronger than it is, and suppose that all the vendors had, before bringing this action, affixed their hands and seals to the contract. If it was before void as against the vendee, no ʳpossible act of the vendors alone could make it obligatory upon him. Nothing but his own act, such as a re-execution or new delivery of the contract, could give it vitality as against him. *See Ludford* v. *Barber*, 1 *T. R.* 86. There was a lapse of two years and a half from the date of the contract to the bringing of this action, within which period there had been a great falling off in the value of city and village lots. It would be most extraordinary if the vendors could wait and speculate upon the market, and then abandon or set up the contract as their own interests might dictate. But without any reference to prices, and whether the delay was long or short, if this was not the deed of the vendee at the time it was signed by himself and Baldwin, it is impossible that the vendors, by any subsequent act of their own, without his assent, could make

it his deed. There is, I think, no principle in the law which will sanction such a doctrine.

*I have taken no notice of the question of variance which was   [ *446 ] raised on the argument, because both parties seemed desirous of having a decision on the merits.

Judgment for defendant.