DETERMINED IN THE

# SUPREME COURT

OF THE

# STATE OF NEVADA,

## DURING THE YEAR 1866.

---

## C. C. CHASE, Appellant, vs. THE SAVAGE SILVER MINING COMPANY, Respondent.

If one locates a mining claim for himself and others, and then enters into a contract for himself and on behalf of the co-locators to give a part of the ground for developing the mine, can the parties whose name he has used in the location accept of their interest in the mine without also ratifying the contract for developing the mine?

In such case, if the acting locator draws up a contract with prospectors, which shows on its face that it was intended to be executed, not only by the party preparing the instrument, but also by others, whose names were attached without their knowledge to the notice of location, these latter are not bound until they sign the contract. The acting locator does not, in such case, profess to act for his associates.

An agent cannot bind his principal by a written instrument, unless it appears from the instrument itself he was acting for the principal.

After notices of location were posted and recorded, and the limits of the mine determined, all the locators became tenants in common. The acting locators could not dispose of the interests of their co-tenants.

If a contract between prospectors and the several locators of a mine is drafted, and signed by part only of the locators, if the prospectors go on to work, it is at their own risk. Those not signing or consenting to the contract are not bound.

If, however, all had been consulted and agreed to the contract, and permitted the prospectors to go on with the work, probably they might have been compelled to a specific performance, although some of them had neglected to sign the contract. But the contract could not be enforced against one who never assented to it.

2

APPEAL from a judgment of the District Court of the First Judicial District, the Hon. CALEB BURBANK, presiding.

All the facts which have any bearing on the points decided, are stated in the opinion.

*Perley & DeLong, James F. Hubbard*, and *J. M. Nougues*, appeared for Appellants.

*Crittenden & Sunderland*, and *Hillyer & Whitman*, for Respondents.

Very voluminous briefs and arguments were filed by all the counsel on each side. The discussion took so wide a range that it would be impossible to give even a condensed synopsis of the various arguments without extending this report to a most unreasonable length. We have therefore omitted giving any statement of the various points made.

After the rendition of the decision, a rehearing was granted, but before the case was finally disposed of, it was compromised, and no final opinion was ever rendered by the Court.

Opinion by LEWIS, C. J., BROSNAN, J., concurring.

This action was brought to recover an interest of sixty-six and two-thirds feet in the Savage Silver Mining ground, of which plaintiff claims he is unlawfully deprived by the defendant.

The established facts material to the issue are substantially as follows: On the fourth day of July, A.D. 1859, L. C. Savage and H. Carmack located the ledge now claimed by the defendant, for themselves and four others, among whom was the plaintiff. At the time of such location the plaintiff was residing in the State of California, and knew nothing of the location. On the ninth day of July, five days after the limits of the claim were defined, and the notice of location was recorded, a contract was drawn up in form between R. Crall, C. C. Chase, H. Carmack, W. Sturdevant, L. C. Savage, and A. O. Savage, the locators, as parties of the first part, and J. McFadden, W. W. Caperton, J. B. Endicott, Samuel Baird, Elisha McCurdy, and —— Hall, as parties of the second part, by the terms of which the parties of the second part agreed to pros-

pect the mining location above referred to " until they struck pay dirt," and in consideration thereof one-half of the entire claim was conveyed to them.

This instrument, though drawn up in form for execution by all the parties, was only signed by L. C. Savage and H. Carmack, on the one side, and W. W. Caperton and S. McFadden on the other. There is not a syllable in the contract from which it can be inferred that the parties who signed it intended to act for or as the agents of the others; but as it is presented to us, appears to be an instrument incompletely executed, being signed only by four out of twelve who are named as parties to it. The plaintiff, Chase, was not informed of his interest in the claim until a month or two after its location and the execution of the contract above referred to. In November following he came to Nevada, and then for the first time he was shown the contract.

He at once declared to Mr. Savage, who showed it to him, that his name was not signed to the contract, and that he did not consider himself bound by it. Savage replied that he did not suppose he was.

At that time several ineffectual efforts were made by Savage and Chase to find the prospectors; but the plaintiff returned to California without having seen any of them. Some work had been done on the claim by them at that time, but they do not appear to have been at work whilst the plaintiff was there in November.

The interest of each locator consisted of one hundred and thirty-three and a third feet. In December, A.D. 1859, the plaintiff conveyed away one-half of his interest, which, if he is not holden upon the contract entered into by Savage and Carmack, leaves about sixty-six feet to which he is still entitled, and to recover which this action is brought.

The prospectors, Baird and his associates, treating the contract as a conveyance *in presenti* to them of one-half of the entire ground, conveyed their respective interests to persons from whom the defendant claims title and the right of possession.

Before the bringing of this action the mine had been developed by the defendant at a vast expense, and valuable and costly improvements had been placed upon the ground, whilst the plaintiff remained quiet and gave no notice of his claim. Upon this state

of facts it is urged on behalf of the defendant, that Savage and Carmack, in executing the contract, acted as the agents of the plaintiff Chase, and that he was therefore bound by it; that he could not accept his interest in the mine and repudiate the contract made for the purpose of developing it; and that in adopting the acts of his agents in the location, he also adopted their subsequent acts with respect to the development and working of it—for it is said a principal on whose behalf an unauthorized agent assumes to act, cannot ratify a part of the transaction without ratifying the whole.

Adopting this view of the case, the Court below, among many other instructions bearing upon the same point, charged the jury as follows : "If you find that L. C. Savage made the location for the plaintiff, and then made the contract in good faith toward the plaintiff, and that the knowledge of the location and of the contract came to him at the same time, then the adoption of the location would be the adoption of the contract."

Whether this instruction would be proper, if Savage or Carmack had assumed to act as the agent of Chase in executing the prospecting contract, as they did in locating the ground, need not be determined in this case, for there is nothing either in the contract itself or the evidence offered at the trial, from which it can be inferred that they even intended to act for him in executing it. So the argument of counsel for respondent rests upon a false premise in that respect, and the conclusion must necessarily be incorrect. If Savage had signed the contract for Chase as his agent, or if there was anything in the contract itself by which it might appear that it was intended to bind him, there might be some ground for claiming that he is holden upon it. Nothing of the kind, however, appears. It is simply a contract in form between the parties, and signed only by four of the number for themselves. There is nothing in the contract by which we can even presume that Savage or Carmack had any intention whatever of acting for the plaintiff. But if it be admitted that they did in fact so intend, that would not be sufficient without the legal steps being taken to accomplish their object. As stated by Justice Bronson, in *Townsend* vs. *Corning* (23 Wend. 441): "It is not enough that a man intends to do a

legal act, unless he uses the legal means for accomplishing his object."

So in this case Savage and Carmack may have intended to act as the agents of the plaintiff in the execution of the contract, but as they have not manifested that intention in legal form, it is of no consequence. Indeed it is a well established rule that every written contract made by an agent, in order to be binding upon his principal, must purport on its face to be made by the principal, or the intent to bind him must appear in the instrument itself. ( *Williams* v. *Christie*, 10 Howard P. Rep. 12 ; *Staunton* v. *Camp et als.*, 4 Barbour, S. C. Rep. 274 ; *Townsend et als.* v. *Corning*, 23 Wend. 435 ; *Evans* v. *Wells*, 22 Wend. 324 ; *Townsend* v. *Hubbard et al.*, 4 Hill, 351 ; *McDonald et al.* v. *Bear River Co.*, 13 Cal. 235.) In the case of *Williams* v. *Christie*, above cited, the contract was one for the sale of certain real property in New York, and purported to be made between Jane Christie, Stephen L. Preston and Margaret Ann, his wife, Levi H. Truex and Mary Jane, his wife, of the first part, and the plaintiff, Williams, of the second part. The wives of Preston and Truex were present when the contract was drawn up, but the instrument was only signed by Jane Christie, Preston, Truex and Williams, and the Supreme Court of New York held the contract utterly void as to those who had not signed it. In delivering the opinion, Justice Bronson says : " The signatures of the husbands of Mrs. Preston and Mrs. Truex do not purport to have been made in behalf of or as agents of their wives. There is nothing on the face of the agreement which intimates that they are agents, or that they assumed to act as agents for their wives in signing it. We consider the doctrine well settled that every written contract made by an agent, in order to be binding upon his principal, must purport on its face to be made by the principal, and must be executed in his name and not in the name of his agent." The instrument in this case was not under seal, and therefore it was not necessary that the name of the principal should be signed to it, but it is indispensable that it should appear upon its face that it was intended to be made for the principal. After the notices of location were posted and recorded, and the limits of the claim defined, the locators became tenants in common of the ground. They stood in that character at the time the contract was executed by Savage and Carmack. As such ten-

ants in common they had a right to dispose of their own interests, but they could in no way dispose of or encumber the interests of their co-tenants.

The contract, therefore, if it be binding upon any one, can only be upon those who signed it. If we should feel disposed to disregard the rules of law, that to make a written contract by an agent binding upon his principal, it must appear upon its face to have been the intention to bind him, and that one tenant in common cannot convey or encumber the interest of his co-tenant, and be governed solely by the intention of Savage and Carmack, we could come to no different conclusions; for there is nothing in the record showing that they ever intended to act for the absent locators; but, on the contrary, it seems to have been the intention to get Chase to execute the contract for himself—for Savage says in his testimony that he did not expect he was bound by it, unless the locators got him to sign it, or he executed a deed for one-half of the ground. The instrument itself is in form the contract of all the parties, and had it been signed by all would probably have conveyed one-half the ground to the prospectors.

Until it was so signed, however, it was incomplete, and the prospectors could not have been compelled to perform their part of it until signed by all the locators. If they went on and did the work under it before it was completely executed, they did it at their own risk, and cannot now come in and claim the same rights under it which they could if signed by all the parties. Had all the locators in fact entered into a contract of this kind, and merely neglected to sign it, without intending to abandon it, and they permitted the prospectors to do the work, as if it were completely executed, there is, perhaps, no doubt but a specific performance would be decreed upon a proper application to a Court of Equity; but surely no Court would enter such a decree against one who had in no way entered into such contract, either verbally or by writing. If we are correct in the conclusion that the instrument was the contract of Savage and Carmack only, or that they did not intend to act as the agents of the plaintiff, there could be no ratification by Chase. There was nothing for him to ratify. There had been no attempt to act for him in the execution of the contract. So the proposition that the plaintiff could not adopt the location without also adopting the con-

tract, or rather that he could not accept the benefit and repudiate the burdens, is answered by the statement of the fact that there was no attempt to make the interest of Chase subject to the contract, or to impose any burden upon it, but it was left for him to do it himself if he chose to do so. And there is no law to sanction the position that he could not adopt the acts of Savage when he acted as his agent in acquiring certain property, without also adopting other transactions with respect to that property in which he merely acted for himself. Suppose Savage and Carmack had mortgaged their respective interests in the claim, for the purpose of obtaining money to develop it, instead of entering into this contract, would it be claimed that the plaintiff could not accept his interest in the claim without assuming a certain proportion of the mortgage? Could the mortgagee in such case claim that his mortgage covered Chase's interest as well as the mortgagors? Most certainly not. And yet we can see no difference upon principle between that case and the one at bar.

If he could accept the location in the hypothetical case without assuming the burden of the mortgage, why can he not, in this case, accept his interest in the location without adopting a contract which did not purport in any way to bind him or his interest? True, by its terms one-half of the entire claim was conveyed to the prospectors, but until executed by all the parties to it, it was either no contract at all, or only the contract of those who signed it.

It was not the intention of Savage and Carmack to convey one-half of the entire claim themselves, but only of *their interest* in it. The prospectors must have known that fact. The contract itself was evidence of it, and that would appear to be the understanding of all the parties. When signed by only two of the parties, therefore, as stated before, the contract was either a nullity, or it was binding upon those only who signed it. If all those who were to sign it failed to do so, the prospectors, by going on with the work under it, could not increase the liability of those who did sign it. The contract, then, stands precisely the same as if Savage and Carmack had in terms conveyed simply one-half of their interest in the claim. With this view of the case, it is obvious that it was no part of the plaintiff's duty to give the prospectors notice that he was not holden upon the contract, for they had no reason to suppose that he was.

We have examined this case with a sincere desire to find some authority for affirming the judgment of the Court below, for we look upon it as one of those cases where the application of the inflexible rules of law operates as a flagrant injustice, which we are loth to sanction.

We have, however, no option but to follow the clear rules of law : for to declare, not to make, the law is the province of the Courts. It is a deplorable fact, which we fully realize, that these stale claims, conjured up from the lawless irregularities of a period when legal forms were disregarded, and physical force was the only law recognized by society, have been a blight upon the prosperity of the great dominant interest of this State.

The rules of the common law, though founded in reason and sanctioned by the wisdom of centuries, afford it but a feeble and inadequate protection from the claims of those who shirk the burden and the labor, and emerge only from obscurity to claim the fruit produced by the industry and perseverance of others.

The State should, therefore, protect her mining interests by such wholesome and just legislation as will, in the future, relieve it from the evils which have beset it in the past. Other instructions were given which were erroneous, but we do not deem it necessary to pass upon them, as the principles announced in this opinion sufficiently dispose of them.

Judgment reversed, and a new trial ordered.

Judge BEATTY having acted as counsel in this case, did not participate in the decision.