J. W. DWYER, Appellee, v. L. A. WIESE, Appellant.

**BROKERS:** Commission—Noncompliance With Specific Authority. *The act of a broker, in contracting in writing and in his own name, to convey the principal's land, earns him no commission, when his specific written authority is* "to enter into a written contract (1) for, (2) on behalf of, and (3) *in the name of, the principal.*" *Especially is this true when the name of the proposed purchaser is concealed from the principal until after suit is brought, and when the conduct of the broker otherwise indicates bad faith.*

*Appeal from Fayette District Court.*—H. E. TAYLOR, Judge.

MARCH 7, 1922.

ACTION at law, to recover commission alleged to have been earned as defendant's agent in the sale of real estate. There was trial to a jury. Verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Havner, Hatter & Harned* and *Ainsworth & Antes,* for appellant.

*E. H. Estey* and *James D. Cooney,* for appellee.

WEAVER, J.—On May 28, 1918, the plaintiff was a real estate agent at West Union, Iowa, and defendant, residing in Iowa County, was the owner of a farm of 115½ acres in Fayette County. On the day named, plaintiff procured from defendant written authority to sell said property. The writing contained the following language:

"I hereby appoint and constitute J. W. Dwyer as my agent and authorize him to enter into a written contract for me

on my behalf and in my name for the sale of said real estate. I agree to furnish a complete abstract of title at my own expense showing a good title and a failure in consequence of defective title shall not release me from paying the commission hereinafter agreed upon. In consideration of a sale at the price and terms set forth on opposite page I agree to pay J. W. Dwyer — per cent on the whole amount. $150 net."

On the opposite page was written, among other things, "Price and terms of sale $150 per acre net, $6,000 down, balance at 5½, 5 years."

It is also alleged by plaintiff that, in January, 1919, the parties orally modified said contract by an explicit agreement that, if plaintiff should find or procure a purchaser for the land at the net price of $150 per acre, plaintiff should receive as commission all of the selling price obtained in excess of $150 per acre. The terms of sale are alleged to have been modified as follows: Purchaser to pay a down installment of not less than $500, and on March 1st following, $5,500; remainder to be paid in five years, with interest at 5½ per cent. Said payment to be secured by mortgage on the property. On July 29, 1919, plaintiff brought this action, alleging that, under the authority so given, he sold the land to Anna S. Billings and L. E. Billings, at the price of $165 per acre, thereby earning a commission of $1,732.50, which defendant has refused to pay; and judgment is demanded therefor.

The defendant, answering the claim thus stated, admits signing the listing contract, but denies every other allegation of the petition. To sustain his claim, plaintiff testified to the alleged oral modification of the commission contract. It was also shown that, on May 16, 1919, plaintiff wrote to defendant as follows:

"Just a line regarding your farm here that Mr. Granger is living on. I am getting out a new list of land and in going over my contracts I find your contract on this place in which you state $150 net to you; $6,000 down, balance 5½ years. As I understand it this mortgage which you take back on the farm is to have interest payment privileges, say of $100, or any multiples on any interest-paying date. This part I did not specify on the card. Please let me hear from you if this is satisfactory.

Understand I have no buyer right at this time but I am in hopes that I will be able to turn this place within the next 90 days."

And to this communication defendant replied, saying:

"In answer to yours of the 16th will state that if you can sell the farm soon, say in 30 days or so, will make terms as you stated, otherwise I am going to raise the price, land here has advanced considerable in the last thirty days."

Thereafter, on June 19, 1919, plaintiff executed a written contract in his own name, with Anna S. Billings and L. E. Billings as purchasers, to sell and convey to them defendant's land for $19,057.50, receiving a down payment of $1,057.50; the remainder being made payable, $6,000 on March 1, 1920, and $12,000 in five years; to be secured by mortgage; conveyance to be made by warranty deed. This instrument is known in the record as Exhibit 4. On the same day, and under same date, he prepared another contract, purporting to be between defendant as seller and himself as buyer of the same land, at the agreed price of $17,325, payable $500 down, $5,500, March 1, 1920, and $11,325 secured by mortgage. This instrument, known in the record as Exhibit 6, he signed in his own name, as party of the second part, and mailed to defendant, with a letter as follows:

"West Union, Iowa.

"L. A. Wiese, Marengo, Iowa.

"Dear Sir:

"Enclosed find contract of sale for your place, also check for $500. I have tried to make this in accordance with our agreement and trust you will find everything satisfactory on this. You understand I reserve the right to pay as much more as I choose in cash March 1, 1920, which I am sure will be satisfactory to you. Please sign both contracts and return one to me for my files.

"Yours respectfully, J. W. Dwyer.

"June 19, 1919."

The defendant, having received this exhibit, refused to sign it, and returned it with the check to the plaintiff, telling him that the 30 days given him to make a sale had expired.

To this plaintiff responded as follows:

"Your letter of the 23d received also the contracts that I sent you. I was sure some surprised to receive a letter of this kind. If I had nothing but your letter of May 19th I claim I am wholly within the time that you gave me to turn this place; in addition to this letter, I have a contract signed by you with no date limit. Now, Mr. Wiese, I have tried to use you fair on all deals I have had with you so far and I am going to expect you to do so with me. I am returning both contracts to you for your signature and please return one of those signed contracts for my files, also find enclosed a check for $500."

At this stage of the business, both parties appear to have employed counsel, who thereafter conducted the correspondence, except a later letter from plaintiff to defendant, under date of July 24, 1919, saying:

"As I have previously written you I have sold your farm in Windsor Township, Fayette County, Iowa, for the sum of $165 per acre and according to the terms of our contract. Our contract provides that I am to receive as my commission all in excess of $150 per acre and consequently I am entitled to $1,732.50 of which I demand payment. Kindly send me a draft for this amount by return mail."

Five days later, July 29th, this action to recover commission was begun. There was a jury trial, resulting in a verdict and judgment for plaintiff for the full amount of his claim, $1,732.50. In answer to a special interrogatory, the jury also found that the written agency agreement between the parties had been orally modified, substantially as alleged by the plaintiff.

I. Appellant's first and principal contention is that the evidence is wholly insufficient to support a finding that plaintiff ever sold defendant's land or produced a purchaser therefor, within the terms of the agency contract as originally written, or as modified by the alleged oral agreement; and we are clearly of the opinion that the objection must be sustained.

Construing that agreement even on appellee's theory of its terms, the authority granted was expressly stated to be "to enter into a written contract *for me on my behalf* and *in my name* for the sale of said real estate" upon the prescribed terms. Recognizing the clear and specific limitations of this authority, plaintiff, in his petition in this action, alleges that, acting upon

this agreement, he did in fact "procure a customer for said premises who was ready and willing to buy same, and with whom defendant entered into a written contract of sale on the 19th day of June, 1919, who was procured and produced by plaintiff, *to wit,* Anna Schatz Billings and L. E. Billings, at a consideration of $165 per acre," and thereby earned as commission the excess of said price over $150 per acre, or $1,732.50, no part of which had been paid. If the evidence upon any reasonable construction could be held to sustain the truth of this allegation of the petition, the plaintiff's right of recovery could not well be doubted; but no such showing is made or attempted. Taking his own word for it, he never entered into any written contract with the alleged purchasers for the defendant or in his name for the sale of the land. He never brought the parties, seller and purchasers, together. Defendant never entered into any contract, written or oral, with the persons whom plaintiff alleges he found and produced, ready and willing to buy on the authorized terms. Upon no theory of the law or of the undisputed facts could plaintiff, as agent, be said to have earned his commission, until he obtained and produced a written contract with a responsible purchaser on the prescribed terms, or at the very least, had produced to the defendant a purchaser ready, able, and willing to take the land on the offered terms. It was not enough for him to announce that he had sold the land to some unnamed and undesignated purchaser, and thereupon demand his commission. If he had, in fact, entered into a contract with a purchaser, within the terms of the agency agreement, it was his duty to report and submit it to his principal; or if he had made no contract, but had in fact found a purchaser ready, able, and willing to take the property on the terms offered, it was his duty to bring the parties together, and give the defendant opportunity to consummate the sale for himself. He did neither. Strange to say that, coming into court to enforce collection of a commission for an alleged sale of defendant's land to the Billingses, neither he nor his counsel ever reported to defendant that any such contract or sale had been made. The names of the persons now alleged to have been the purchasers were never revealed or made known by him to his principal until after this suit was brought, and the identity of

the alleged purchasers was necessarily revealed in his petition; and not until then was the existence of any contract of any kind with the Billingses made known to defendant. When produced, that contract proved to be the instrument Exhibit 4, to which we have already adverted, an agreement between plaintiff personally and the Billingses. Even if we were to admit the appellee's contention in argument, that this contract, though in form a personal one, between plaintiff and the Billingses was yet enforcible as the contract of the defendant, who is nowhere named therein, it would not support a claim by plaintiff for commission until he had reported or submitted it to his principal. This he did not do; but on the contrary, instead of reporting the contract to defendant, he concealed or withheld it, retained in his possession the advance payment of $1,057.50 received from Billings, which also he failed to report to his principal, and submitted to defendant Exhibit 6, being a form of contract for a sale of land by defendant directly to himself, for a sum $1,732.50 less than the price named in his contract with Billings. The letter or report sent defendant with this contract carefully omits to make any mention of the sale to Billings, or of the contract made with Billings, or receipt of the advance payment of $1,057.50; and, as we have already said, the existence of such contract was never made known to the defendant until after this suit was begun. It is not easy to understand just what effect appellee claims for his Exhibit 6, which, had it been accepted by defendant, would have evidenced a sale by the principal to his agent. Had that deal been effected, it is more than probable that defendant never would have heard of the contract with Billings. It was Exhibit 6 alone which plaintiff tendered to defendant. It was the same contract which he insisted that defendant should sign. It was to apply upon that contract, and none other, that he remitted the check for $500. It was that contract and that check which he continued to return to defendant, demanding its acceptance, until better advised as to his lack of authority to sell the property to himself; and it was then and then only that the first information was vouchsafed to defendant that, under the authority of the written contract of agency, "Mr. Dwyer, as agent of Mr. Wiese, sold the farm to *a third person;*" but the defendant was left still

in the dark as to the identity of the "third person" referred to. It is a sound proposition of law, as well as of morals, that an agent's relation with his·principal with respect to the subject of his agency should be marked with the utmost candor and good faith. This rule is too elementary to call for discussion or citation of authorities. This implies the duty of the agent to report and account to his principal for all his dealings with the subject-matter of his agency. If he be authorized to sell his principal's property on commission, he cannot rightfully conceal such sales, or fail to report or account therefor, and still demand and recover compensation. If, acting or professing to act under the principal's authority, he obtains a contract for the sale of his principal's property, and puts it in his pocket or locks it in his safe, and withholds knowledge thereof from his principal while he maneuvers to get a conveyance direct to himself, it is quite unthinkable that, while he is maintaining that attitude, any court will permit him to enforce a claim for commission.

It is not, as counsel for appellee seem to think, an answer to these objections to say that the contract with Billings, though made in the name of the plaintiff, could have been specifically enforced by either Billings or the defendant. . The question in this case is not whether the contract was capable of enforcement, but whether plaintiff has shown himself entitled to recover commission; and this, under the showing made in the record before us, we hold must be answered in the negative.

II. Paragraphs 7 and 8 of the court's charge to the jury read as follows:

"Paragraph 7. You are instructed that, if you find from a preponderance of the evidence that, at the time of the execution and signing of said contract of sale with the said Anna Schatz Billings and L. E. Billings, the said J. W. Dwyer informed the said Anna Schatz Billings and L. E. Billings that the said L. A. Wiese was the owner of said premises, and they understood and knew that the said J. W. Dwyer was acting for the said L. A. Wiese in the execution of said contract, and the said J. W. Dwyer was, in fact, acting for the said L. A. Wiese in the signing of said contract, then, even though the said J. W. Dwyer signed his own name to said contract, instead of the

name of L. A. Wiese, still such fact would not be a defense in this action, and said contract would be just as legal and binding as though the said J. W. Dwyer had signed the name of the said L. A. Wiese to said contract, by himself as agent.

"Paragraph 8. You are instructed that the plaintiff has offered in evidence a contract signed by himself, which he claims was submitted through the United States mails to defendant, Wiese, for his execution. In this connection, you are instructed that the offer by the plaintiff to enter into such contract would in no wise entitle plaintiff to recover, *unless you find, from a preponderance of the evidence, that, prior to that time, that the plaintiff, acting for said Wiese, had entered into a written contract for the sale of said premises to Anna Schatz Billings and L. E. Billings,* in compliance with the terms and conditions upon which you may find that plaintiff was authorized to sell said premises for defendant, and that such purchasers were ready, able, and willing to carry out the terms of the contract of purchase."

Exception is taken to both of said instructions, and we think they cannot be approved. It should be borne in mind, as we have already suggested, that the question here is not whether, under some circumstances, the so-called Billings contract might or might not be held valid, but is, rather, whether its execution was such a performance of the agency agreement as entitled plaintiff to recover the commission there provided for.

In this case, as we have seen, the power granted to the plaintiff is reduced to specific written terms, and the authority so granted must be measured by the language there used. It is, as we have seen, "to enter into a written contract for me, in my behalf, and in my name, for the sale of said real estate." It is the defendant speaking. He had the right to limit his agent's authority by such terms and restrictions as he saw fit to impose, and plaintiff could earn no commission thereunder except as he should observe and comply with those terms. Now, for the purposes of this case, it may be conceded (but without so deciding) that, where an agency is created in general terms, without specifically providing for the manner in which the power so conferred is to be exercised, the rule laid down in the

seventh instruction may be applicable, and that a contract made by such agent in his own name may be construed and enforced as the contract of his principal; but if the written power conferred upon the agent clearly defines the power granted and the manner of its execution, no such latitude of construction is allowable. This is especially true where the agency is special and the written authority directs in strict and specific terms its manner of execution. In this case, the plaintiff's authority is to enter into a *written* contract of sale for his principal, in *his* behalf and in *his* name. Such authority will not support a parol contract, even though made in the principal's name, nor can it be distorted into supporting a written contract *not made in his name*. It is an old and well settled rule that the authority of a limited or special agent must be strictly pursued, to bind the principal. *Baring v. Peirce,* 5 Watts & S. (Pa.) 548 (40 Am. Dec. 534); *Persons v. McDonald,* 60 Neb. 452 (83 N. W. 672); 1 A. & E. Encyc. of Law (2d Ed.) 1035. Indeed, we think it would be difficult to produce precedent or authority for the proposition that a written contract by which A, in his own name, has undertaken to sell and convey land to B may be enforced as the contract of C, whose name or existence or interest in the transaction is not revealed or suggested in the writing itself. *Stackpole v. Arnold,* 11 Mass. 26; *Chase v. Savage S. Min. Co.,* 2 Nev. 9; *Prather v. Ross,* 17 Ind. 495. This is assuredly true where the only authority of the alleged agent is, by the express terms of his appointment, limited and restricted to the making of a written contract *in the name* of his principal. There are many obvious reasons why the owner of property, in creating an agency for its sale, should fence against liability on contracts made in the agent's individual name, and restrict his authority to the making of contracts in writing in the name of his principal. Having imposed that condition, it follows, in the absence of waiver or estoppel, that he may refuse to be bound by any contract made by the agent in disregard of such limitation.

We turn now to the eighth paragraph of the court's charge to the jury. This instruction has evident reference to the form of the contract, Exhibit 6, for sale of the land to plaintiff himself. If the purpose and intent of this instruction were to

inform the jury that under no circumstances could plaintiff recover commissions upon a sale of the land to himself, and that evidence of his offer to make such purchase was entirely immaterial, except as it might bear upon his claim to have made a prior contract of sale to Billings, no valid objection could be made thereto; but the language of the paragraph as written is capable of a somewhat different, if not a contrary, construction. In view, however, of our discussion already had, relating to the seventh paragraph of the charge, and to the insufficiency of the, evidence to sustain a verdict for plaintiff upon the Billings contract, the error, if there be any, in the eighth paragraph is not of material importance.

Many other points have been advanced and argued by counsel on either side, but those already considered are sufficient to indicate the necessity of a reversal of the judgment appealed from, and nothing is to be gained by prolonging the opinion for their further discussion.

For reasons stated, the judgment of the district court is reversed, and new trial ordered.—*Reversed and remanded.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.