## DODGE VS. HOPKINS.

In an action to recover several instalments of the purchase money of real estate, the defendant, after having filed a general denial, asked leave to file a supplemental answer alleging that *after* the first answer was filed the last instalment of said purchase money became payable ; that by the terms of the contract the plaintiff was bound, upon the payment of the whole of the purchase money when it fell due, to him, his agent or attorney, at the office of W. & B., to cause to be executed to the defendant, on demand, a deed of said real estate; and that on the day said last instalment fell due, the defendant tendered to the plaintiff the whole of the purchase money and the costs in the suit to that date, at the said office of W. & B., and demanded of the plaintiff' s agents, W. & B., a deed of said real estate and presented a deed thereof for execution, but the plaintiff neglected and refused to execute a deed thereof to the defendant. *Held*, that the supplemental answer did not show a defense to the action, because it did not appear from it that W. & B. were agents of the plaintiff authorized to convey said real estate, or that they had any specific authority in the premises; and there was no error in refusing leave to file said answer.

From the nature of the transaction and the usual course of business in such cases, it must be presumed to have been the intention of the parties, that the plaintiff should have a reasonable time after payment and notice, in which to make and forward the conveyance. In the absence of a different arrangement, the law would give him a reasonable time for that purpose.

In a letter of attorney executed by husband and wife, the authority given to the agent was expressed as follows: "To sell all *our* right and title in any and all the lots of which *we* may be possessed in the city of M., and particularly those lots which were conveyed to *us* by J. D. D——and S. T. M——, for the numbers and descriptions of which we refer to the records of deeds in the county of D——; and in our name to execute all deeds necessary to convey

*our* title to said lots, &c." *Held*, that under this instrument, in the absence of any proof that there were no lots in M. belonging to the husband and wife jointly, the agent had no power to sell lots the title to which was in the husband alone.

If it had appeared by the evidence that there was no joint estate to which the authority could be applied, it might very reasonably be urged that the wife joined in the instrument only for the purpose of releasing her dower.

The power of attorney in this case bore date August 6, 1856, and was acknowledged by husband and wife August 9, 1856, at Madrid, in Spain, and was acknowledged by the husband alone July 23, 1859, before a notary in this state. *Held*, that in the absence of any circumstance tending to induce belief that the instrument may have been antedated, or was not delivered at the time of its date, the day of the date may fairly be assumed to have been the time of its delivery.

If a question of fraud or other serious objection should arise, an explanation of the discrepancy would undoubtedly be required.

Under the statute of frauds in this state (sec. 8, ch. 106, R. S.), a contract for the sale of land is *void* unless the contract, or some note or memorandum thereof expressing the consideration, be in writing and be subscribed by the party making the sale, or his agent lawfully authorized.

Where a contract for the sale of land is not binding upon the owner of the land, because made by a person who assumed to act as his agent without any authority, it is not binding upon the other party.

No subsequent act of the owner in ratification of the contract, could make it obligatory upon the other party without his assent.

If part of the purchase money was paid to the agent, the owner of the land was at liberty to reject it, and his subsequent acceptance of it, being an act with which the other party was in no way connected, imposed no obligation on the latter until he actually assented to it.

Under secs. 6, 8 and 9, chap. 106, R. S., the authority of the agent who *contracts to convey* land need not be in writing, but that of the agent who *executes the conveyance* must be.

Whether in a case where the vendee relies upon a previous *written* authority empowering the person acting as agent for the vendor to execute the contract to sell, it would be sufficient for the vendor to show that such agent had a previous *oral* authority for that purpose, is not here determined.

APPEAL from the Circuit Court for *Dane* County.

Action commenced February 25th, 1860, to recover two instalments, with interest, alleged to be due on a land contract. The complaint alleges that on the 1st of May, 1857, at Madison in Dane county, the plaintiff, by his duly authorized agent and attorney, W. F. Coolbaugh, entered into a written contract with the defendant under their seals, by which the defendant agreed to pay the plaintiff $1880, viz., $470 at the sealing and delivery of said agreement (the receipt of which is therein acknowledged), and the remainder

June Term 1861.

Dodge
v.
Hopkins.

in three equal annual instalments, with interest, &c., which payments were to be made to the plaintiff, his agent or attorney, at the office of Williamson, Catlin & Barwise, in Madison, and were to apply as the purchase money of lots 8 and 9, block 62, in said city of Madison; that by said agreement the plaintiff bound himself, his heirs &c., that on payment of said sum of $1880, with interest, at the times and in the manner above specified, he would, on demand thereof, cause to be executed and delivered to the defendant a good and sufficient deed of the premises free of all incumbrances except certain taxes which the defendant agreed to pay; that the plaintiff had always been ready to perform the contract on his part; and that the ~~plaintiff~~ had made default in the payment of the instalments due on the 1st of May in the years 1858 and 1859 respectively, for the amount of which judgment was claimed.

The defendant answered by a general denial. When the cause came on for trial, and before the impaneling of the jury, he applied, upon due notice, for leave to file a supplemental answer, which alleged that on the first of May, 1860, he tendered to the plaintiff, at the place named in the contract, the whole of the purchase money for said lots, and the costs of this suit up to that day, and demanded of the plaintiff's agents, Williamson & Barwise, a deed of the premises, according to the terms of said contract, and presented a deed thereof for execution, but the plaintiff then and there refused to execute and deliver a deed thereof, by which refusal the contract became void, &c. This application was supported by an affidavit of the defendant verifying the allegations of the supplemental answer, and showing that he had been advised by his counsel that the facts therein stated were material facts in the case, together with an affidavit of merits. The court refused to permit the supplemental answer to be filed. On the trial, the plaintiff offered in evidence the contract mentioned in the complaint, which was signed " A. C. Dodge, by W. F. Coolbaugh, Atty.," with a seal attached to said signature, and also signed and sealed by the defendant. The plaintiff, at the same time, offered in evidence a sealed instrument purporting to have been executed

on the 6th of August, 1856, at Madrid, in the kingdom of Spain, by the plaintiff, *Augustus C. Dodge*, and his wife Clara Ann Dodge, constituting William F. Coolbaugh their attorney for the sale and conveyance of certain lands. There was annexed to this instrument a certificate of its acknowledgment by the plaintiff and his wife, before the Secretary of Legation of the United States at Madrid, dated on the 9th of August, 1856, and also a certificate of its acknowledgment by the plaintiff alone before a notary public in this state, dated July 23d, 1859. The provisions of this power of attorney are sufficiently stated in the opinion of this court. The defendant objected to the introduction in evidence of the contract and power of attorney, "1. Because the execution of the contract was not proven. 2. Because the power of attorney did not authorize the attorney to sell the individual lands of *A. C. Dodge*, or to execute a contract in the name of the plaintiff alone. 3. Because the authority of Coolbaugh to make the contract was not shown." The court overruled the objection. After reading the contract and power of attorney, and presenting a computation of the amount due, the plaintiff rested. The defendant moved for a nonsuit, on the ground that the power of attorney did not authorize Coolbaugh to make said contract, and that the facts proven did not constitute a cause of action, which motion was overruled. The defendant then rested, and asked the court to instruct the jury "that the delivery of the power of attorney to Coolbaugh, and the time of such delivery, were questions of fact for the jury to find; and that in the absence of proofs as to the time of delivery, the presumption was that it was delivered at the time it was acknowledged." This instruction the court refused, but instructed the jury that in the absence of proof the presumption was that the power of attorney was delivered to the agent, Coolbaugh, at the time it bears date.

Verdict and judgment for the plaintiff.

*J. C. Hopkins*, for appellant:

1. The court erred in refusing leave to file the supplemental answer. Sec. 41, chap. 125, R. S. (1.) Under the old practice defendants had a right to file a plea *puis darrein con-*

June Term, 1861.

DODGE
v.
HOPKINS.

*tinuance*, without leave of court, by verifying the ple a; and the supplemental answer being a substitute for such a plea, the defendant should not be required to satisfy the court of its materiality except by an affidavit of merits and advice of counsel as to materiality. (2.) The facts set up in the supplemental answer were material. 1 Blackf., 172; 4 id., 341; 7 id., 227; 1 id., 245. 2. The power of attorney constituted Coolbaugh the agent of the parties who executed it, only as to lands owned *jointly* by them. *Johnston vs. Wright*, 6 Cal., 373; *Rossiter vs. Rossiter*, 8 Wend., 494. 3. The question as to the *time* at which the power of attorney was delivered, was for the jury to determine; and in the absence of evidence, the presumption was that it was not delivered until it was acknowledged.

*Abbott, Gregory & Pinney*, for respondent:

1. The agreement of the appellant to pay the sums for the recovery of which the action was brought, is absolute and unconditional, and a refusal by the respondent to perform on his part would be no defense to the action. *West vs. Emmons*, 5 Johns., 181; *Robb vs. Montgomery*, 20 id., 15; *Champion vs. White*, 5 Cow., 510; *Grant vs. Johnson*, 1 Seld., 247. The matter offered to be set up in defense by supplemental answer was therefore properly rejected. 2. The contract itself furnished *prima facie* evidence of *Coolbaugh's* authority, and no effort was made to rebut it. 3. The power offered in evidence was sufficient. There is no proof that it was executed by any one except the respondent; but if it is claimed that it is shown to have been executed by the respondent and his wife, the presumption would be that her interest in the land was such only as resulted from being the wife of the respondent. 4. The presumption of the law, in the absence of any evidence to the contrary, is that the power of attorney was delivered to Coolbaugh at the time it bears date. *Touchstone*, 72; *Colquhoun vs. Atkinsons*, 6 Munf., 550; *Elsey vs. Metcalf*, 1 Denio, 323.

December 30.

*By the Court*, DIXON, C. J. There was no error in refusing to receive the supplemental answer. Admitting that the refusal of the plaintiff to convey after tender of the

June Term,
1861.

DODGE
V.
HOPKINS.

principal, interest and costs of the action, would, if well pleaded, constitute a defense, the facts stated in the supplemental answer were quite insufficient for that purpose. It does not appear that Catlin, Williamson & Barwise were the agents of the plaintiff, authorized to convey the lots, or that they had any specific authority in the premises. The most that can be assumed is, that they were to receive the money, notify the plaintiff of the payment, and hold it for him until called for. From the nature of the transaction and the usual course of business in such cases, it must be presumed to have been the intention of the parties that the plaintiff should have a reasonable time after payment and notice in which to make out and forward the conveyance. In the absence of a different arrangement, the law would give it to him. Instead of paying the money and waiting such time, the defendant tendered it and demanded a deed *instanter* and as the condition upon which the money was offered. He probably knew very well that this unreasonable and inconsistent demand could not be complied with, and the tender under such circumstances looks like a device to prolong rather than a *bona fide* effort to cut short the litigation. The answer showed no defense and was properly rejected.

Of the questions arising upon the trial the first is, whether the agent Coolbaugh was authorized by the letter of attorney offered in evidence to sell the lands of which the plaintiff was sole owner. We think upon the facts of the case as now presented, that he was not. His agency was special, and the authority conferred distinctly stated. It was a joint letter, being executed by the plaintiff and Clara Ann, his wife. The business to be transacted was that in which they were jointly concerned. The agent was to sell and convey the lots and outlots of which *they* were possessed in the city of Madison, more particularly those which were conveyed to *them* by James Duane Doty as trustee of the Four Lake Company and Moses M. Strong as attorney of the late Stevens J. Mason, for the numbers and description of which reference was made to the records of the deeds in the county of Dane. He was to execute and deliver for *them* and in *their* names and behalf, all necessary deeds and other instru-

June Term,
1861.

DODGE
v.
HOPKINS.

ments in writing. This was the substance of the authority given. No reference was made to the separate property of either of the parties, and, if they had any, it cannot be inferred that they intended to authorize Coolbaugh to dispose of it. The rule of law is well settled that the authority of a special agent must be strictly pursued, and if it is not, the principal will not be bound. The authorities on this subject are collected and reviewed by Chief Justice SAVAGE in *Rossiter vs. Rossiter*, 8 Wend., 494. It seems to us too obvious for argument that upon the face of the instrument the agent had no power to sell the plaintiff's separate estate.— We are to dispose of the question as if the plaintiff were here resisting, instead of endeavoring to avail himself of, the authority exercised. If the positions of the parties were reversed, the plaintiff repudiating the contract as unauthorized, and the defendant seeking a specific performance, it would hardly be seriously contended that the letter of attorney alone would bind him. Reference was made to the records in the office of the register. An examination of the conveyances referred to might reveal the fact that the title of the lots was vested solely in the plaintiff, and that there was no joint estate to which the letter of attorney could be applied, which would place matters in a very different attitude. It might then be very reasonably urged that Mrs. Dodge joined in the letter of attorney for the purpose of releasing her right of dower in the estate of her husband.— Unaided by extrinsic evidence we cannot assume that there was no joint estate to which the authority could be applied, or depart from the strict language of the instrument.

We are next to ascertain the effect of this want of authority upon the rights of the defendant. It is very clear, in the present condition of the case, that the plaintiff was not bound by the contract and that he was at liberty to repudiate it at any time before it had actually received his sanction. Was the defendant bound? And if he was not, could the plaintiff, by his sole act of ratification, make the contract obligatory upon him? We answer both these questions in the negative. The covenants were mutual—those of the defendant for the payment of the money being in consideration

June Term,
1861.

DODGE
v.
HOPKINS.

of that of the plaintiff for the conveyance of the lands.—
The intention of the parties was that they should be mutu-
ally bound—that each should execute the instrument so that
the other could set it up as a binding contract against him,
at law as well as in equity, from the moment of its execu-
tion. In such cases it is well settled both on principle and
authority, that if either party neglects or refuses to bind him-
self, the instrument is void for want of mutuality, and the
party who is not bound cannot avail himself of it as obliga-
tory upon the other. *Townsend vs. Corning*, 23 Wend., 435,
and *Same vs. Hubbard*, 4 Hill, 351, and cases there cited.—
The same authorities also show that where the instrument is
thus void in its inception, no subsequent act of the party
who has neglected to execute it can render it obligatory up-
on the party who did execute, without his assent. The
opinion of Judge BRONSON in the first named case is a con-
clusive answer to all arguments to be drawn from the subse-
quent ratification of the party who was not originally bound.
In that case as in this, the vendors had failed to bind them-
selves by the agreement. He says: " It would be most ex-
traordinary if the vendors could wait and speculate upon
the market, and then abandon or set up the contract as their
own interests might dictate. But without any reference to
prices, and whether the delay was long or short, if this was
not the deed of the vendee at the time it was signed by him-
self and Baldwin (the agent), it is impossible that the vend-
ors, by any subsequent act of their own without his assent,
could make it his deed. There is, I think, no principle in
the law which will sanction such a doctrine." The only
point in which the facts in that case differ materially from
those here presented, is, that no part of the purchase money
was advanced to the agent. But that circumstance cannot
vary the application of the principle. The payment of the
money to the agent did not affect the validity of the con-
tract, or make it binding upon the plaintiff. He was at lib-
erty to reject the money, and his acceptance of it was an
act of ratification with which the defendant was in no way
connected, and which, although it might bind him, imposed
no obligation upon the defendant until he actually assented

June Term,
1861.

DODGE
v.
HOPKINS.

to it. It required the assent of both parties to give the contract any vitality or force.

I am well aware that there are *dicta* and observations to be found in the books, which, if taken literally, would overthrow the doctrine of the cases to which I have referred.— It is said in *Lawrence vs. Taylor*, 5 Hill, 113, that "such adoptive authority relates back to the time of the transaction, and is deemed in law the same to all purposes as if it had been given before." And in *Newton vs. Bronson*, 3 Kern., 594, the court say: "That a subsequent ratification is equally effectual as an original authority, is well settled." Such expressions are no doubt of frequent occurrence, and although they display too much carelessness in the use of language, yet if they are understood as applicable only to the cases in which they occur, they may be considered as a correct statement of the law. The inaccuracy consists in not properly distinguishing between those cases where the subsequent act of ratification is put forth as the *foundation of a right in favor* of the party who has ratified, and those where it is made the basis of a demand *against* him. There is a broad and manifest difference between a case in which a party seeks to avail himself, by subsequent assent, of the unauthorized act of his own agent, in order to enforce a claim against a third person, and the case of a party acquiring an inchoate right against a principal, by an unauthorized act of his agent, to which validity is afterwards given by the assent or recognition of the principal. , Paley on Agency, 192, note. The principal in such case may, by his subsequent assent, bind himself, but if the contract be executory, he cannot bind the other party. The latter may, if he choose, avail himself of such assent *against* the principal, which if he does, the contract, by virtue of such *mutual* ratification, becomes *mutually* obligatory. There are many cases where the acts of parties, though unavailable for their own benefit, may be used against them. It is upon this obvious distinction, I apprehend, that the decisions which I have cited are to be sustained. *Lawrence vs. Taylor* and *Newton vs. Bronson* were both actions in which the *adverse* party claimed rights through the agency of individuals whose acts had

been subsequently ratified. And the authorities cited in support of the proposition laid down in the last case (4 Wend., 219; 1 Pick., 372; 3 Hill, 552; 5 id., 137; 9 Cranch, 153, and 5 Wheat., 241) will, when examined, be found to have been cases where the subsequent assent was employed against the persons who had given it and taken the benefit of the contract.

Thus far the question has been considered independently of any controversy which might grow out of the statute of frauds. It is very well known that under the English statute, and that of New York prior to the revision of 1830, it was generally held that it was sufficient if the contract was signed by *the party to be charged*, whether buyer or seller, and that mutuality of obligation was unnecessary to the validity of the agreement. The earlier authorities upon the subject are reviewed at length by Chancellor KENT, in *Clason vs. Bailey*, 14 Johns., 484, and although the doctrine did not meet his approval, he felt himself overborne by the cases. He says: "I have thought, and have often intimated, that the weight of argument was in favor of the construction, that the agreement concerning lands, to be enforced in equity, should be mutually binding, and that the one party ought not to be at liberty to enforce, at his pleasure, an agreement which the other was not entitled to claim. It appears to be settled, that though the plaintiff has signed the agreement, he never can enforce it against the party who has not signed it. The remedy, therefore, in such case, is not mutual. But, notwithstanding the objection, it appears from the review of the cases, that the point is too well settled to be now questioned." It likewise received the unqualified disapprobation of Lord REDESDALE, who condemned it as unfounded in reason and enormously unjust in its consequences. He says (*Lawrenson vs. Butler*, 1 Sch. & Lef., 13): "I confess that I have no conception that a court of equity ought to decree a specific performance in a case where nothing has been done in pursuance of the agreement, except where both parties had by the agreement a right to compel a specific performance according to the advantage which it might be supposed they were to derive from it, because oth-

erwise it would follow that the court would decree a performance where the party called upon to perform might be in this situation, that if the agreement was advantageous to him he could not compel a performance. This is not equity as it seems to me." Again, "In the case of *Hutton vs. Gray*, 2 Ch. Cas., it was considered as sufficient that the agreement should be signed by the party against whom the performance was sought, because such are the words of the statute of frauds; now, such certainly is the import, that no agreement shall be in force but when signed by the party to be charged; but the statute does not say that every such agreement shall be enforced; the statute is in the negative. To give it this construction would, as I have heard it urged, make the statute really a statute of *frauds*; for it would enable any person who had procured another to sign an agreement, to make it depend on his own will and pleasure whether it should be an agreement or not." I have adverted to these cases, not because the doctrine which sprung up under the English statute has any application under our own, but for the purpose of showing that the current of authority is not entirely unbroken, and that it met the opposition of those distinguished jurists. In the revision of 1830, the law of New York was very materially changed, and our statute is a transcript of the revised act. See *Brandeis vs. Neustadtl*, 13 Wis., 142. Unlike the English statute, which requires the contract to be *signed* by the party to be charged, it declares (R. S., chap. 106, sec. 8) that every contract for the leasing for a longer period than one year, *or for the sale*, of any lands or any interest in lands, shall be *void* unless the contract, or some note or memorandum thereof expressing the consideration, be in writing, and be *subscribed* by the party by whom the *lease or sale* is to be made. But every instrument required to be subscribed by any party under that provision, may be subscribed by the agent of such party, lawfully authorized. Idem, sec. 9. Under this statute it has frequently been held in New York, that a contract for the sale of lands is not binding upon either party, unless the agreement is subscribed by the party by whom the sale is to be made, or his agent duly authorized; and that it is not sufficient to

charge the vendee upon such contract, that the agreement is duly subscribed by him or his agent. *Mc Whorter vs. McMahon*, 10 Paige, 386 ; *Champlin vs. Parish*, 11 id., 405. This con- clusion is very obvious, since the statute expressly declares that the contract shall be *void* unless subscribed by the vendor or his lawfully authorized agent. There is therefore no opportunity for applying the English doctrine to cases of this nature ; and it is, perhaps, immaterial with us whether it is right or wrong.

The authority of the agent *contracting to convey*, under sections 8 and 9, need not be in writing, though that of the agent *conveying*, under section 6, must be. *Lawrence vs. Taylor*, and *Mc Whorter vs. McMahon, supra.* An authority may as well be conferred by adopting the transaction, when the question arises under the statute of frauds, as under the common law. *Lawrence vs. Taylor, supra* ; *Davis vs. Shields*, 24 Wend., 325. Whether in a case like the present, where the vendee, at the time of making the contract, relied upon a previous written authority to sell, it would be sufficient to show a previous *parol* authority, is a question which I do not remember to have seen discussed, and which need not now be considered. In none of the cases which have fallen under my observation has such a question been raised.

In the absence of any circumstances tending to induce a belief that the instrument may have been antedated, or that it was not delivered at the time of its date, the day of the date may fairly be assumed as the time of delivery. The acknowledgment at a subsequent time, in a case otherwise free from the suspicion of fraud or unfairness, is not perhaps a circumstance of sufficient importance to overcome the ordinary presumption that the instrument was delivered at the time it bears date. If a question of fraud or other serious objection should arise, an explanation of the discrepancy would undoubtedly be required. In this case no such question was made, and it was therefore properly assumed that the letter of attorney was delivered at the time of its date.

No original authority to the agent making the contract having been shown, and no evidence offered on the

trial of such ratification as bound the defendant, it follows that the judgment must be reversed and a new trial awarded. Ordered accordingly.