## McClaskey *et al.* v. Barr *et al.*

## Barr *et al.* v. McClaskey *et al.*

### *(Circuit Court, S. D. Ohio, W. D.  May 27, 1892.)*

#### No. 3,984.

**1. Powers of Attorney to Convey Land — Scope of Authority — Misdescription Source of Title.**

In 1881 four persons brought suit against numerous occupants of a tract of land for partition, alleging that they were "the heirs at law of William Barr, Sr., deceased, and as such heirs at law were the owners in fee simple," etc.  For the purpose of settling with any defendants willing to purchase their interest they each gave to a third person a power of attorney to convey "my interest as heir at law of my father, William Barr, who was the son of John Barr, who was the brother of William Barr, Sr.," in the land in controversy, "being the same premises owned during his life by William Barr, Sr., the granduncle of the constituents of this power of attorney."  The attorney made conveyances to various defendants, generally by quitclaim deeds, which. in some cases followed the language of the power of attorney in describing the source of title.  It appeared, however, that plaintiffs derived no interest in the land as heirs of their father, William Barr, but that they did derive by inheritance an interest through Jane Barr, in whom the title vested on the death of William Barr, Sr.  *Held* that, as the powers of attorney and deeds were given for conveying the interest in litigation, they were effectual to pass any interest derived from William Barr, Sr., by representative heirship, notwithstanding the misdescription as to the immediate scource of title.

**2. Same.**

At the time of giving the power of attorney, and at the date of the deeds made by the attorney, plaintiffs also had an interest in the land, derived from a devise to them by Robert Barr, a brother of William Barr, Sr.  But this interest was then unknown to them, was not involved in the litigation, and the will, which was executed in another state, had not been admitted to record in the county where the lands were situated, as required by the local statutes.  *Held*, that this interest did not pass by virtue of the power of attorney and the quitclaim deeds.

**3. Same—Revocation by Death.**

A power of attorney to convey lands is immediately revoked by the death of the principal, and deeds subsequently made by the attorney are null.  *Ish* v. *Crane*, 8 Ohio St. 521, distinguished.

In Equity.  Bill for partition of lands.  For former decisions, see 38 Fed. Rep. 165; 40 Fed. Rep. 559; 42 Fed. Rep. 609; 45 Fed. Rep. 151; 47 Fed. Rep. 154; 48 Fed. Rep. 130.

*C. W. Cowan*, *Henry T. Fay*, and *Howard Ferris*, for complainants.
*Samuel T. Crawford* and *W. S. Thurstin*, for cross complainants.
*Stephens, Lincoln & Smith*, and *Bateman & Harper*, for respondents.

Jackson, Circuit Judge.  The questions now before the court for determination in the above causes arise under the cross bill, and relate chiefly to the proper construction of the powers of attorney given in 1881 and 1882, by Robert Barr, Samuel Barr, Jane Chapman, and Martha Reed, to Ozra J. Dodds and Irvine B. Wright, and to the effect and operation of the releases which said attorneys in fact executed to the several cross defendants under and by virtue of said powers.  Cross complainants do not attack or attempt to set aside and vacate said releases for fraud or want of consideration.  They claim that said powers of attorney did not authorize any release of the interests in the land which their present suit seeks to recover; that said powers of attorney only authorized their agent to release such interest in the land as they inherited as heirs

at law of their father, William Barr; and that the interests they are seeking to recover in the present suit as heirs of Mary Jane Barr and as devisees under the will of Robert Barr, deceased, were not embraced in said power of attorney, nor released by their said agent in the attempted execution thereof. They further claim, in respect to the releases executed by the said attorney in fact Irvine B. Wright after May 18, 1883, that the same are void as to the heirs of Martha Reed, who departed this life on said date.

Cross complainants first move to suppress the power of attorney and releases made thereunder. This motion is denied. Said power of attorney and the releases executed thereunder are relevant and competent evidence in behalf of cross defendants, and no valid reason or ground for excluding these documents is presented.

On the other questions arising under said power of attorney and the releases executed by Irvine B. Wright as attorney in fact, and in respect to the circumstances and conditions attendant upon and surrounding the parties at the date or dates of their execution, there are no disputes or controverted facts or issues. The material facts are that in July, 1881, Robert Barr, Samuel Barr, Jane Chapman, and Martha Reed commenced four several suits in the court of common pleas of Hamilton county, Ohio, against many of the then occupants and claimants of the land in controversy, alleging that William Barr, Sr., died seised of the fee in said land, and that each of them, respectively, was "the heir at law to the estate of William Barr, Sr., deceased, and as such heirs at law were the owners in fee simple" of an undivided interest therein which they respectively sought to have declared and set apart to them. The attorneys representing said plaintiffs were to be paid a contingent fee as compensation for their services, based upon what might be secured by compromise of their claim, or might be recovered in the suit. After the suit was commenced said plaintiffs executed first to said Ozra J. Dodds in 1881, and, after his death, to Irvine B. Wright, in 1881 and 1882, power of attorney "to bargain, sell, and convey in fee simple, by deed of special or general warranty, for such price in cash or upon such terms of credit and to such person or persons as he shall think fit, my interest as heir at law of my father, William Barr, who was the son of John Barr, who was the brother and heir at law of William Barr, Sr., deceased, in and to the whole or any part of" the land in controversy, (describing the same,) "being the same premises owned during his life by Wm. Barr, Sr., the granduncle of the constituent of this power of attorney." The several powers of attorney are in substantially the same form. During 1881, 1882, and 1883 the attorney in fact under said power made releases of all the right, title, and interest of the several constituents of said powers in the land in controversy, generally by quitclaim conveyances, which in some cases followed the language of the power of attorney in the use of the words "as heirs at law of my father, William Barr, who was the son of John Barr, who was the brother and heir at law of Wm. Barr, Sr., deceased," etc., and in other cases omitted those words.

When the aforesaid suit was commenced, and when said powers of attorney were executed by Robert Barr, Samuel Barr, Jane Chapman, and Martha Reed, they, nor either of them, had or held any right, title, or interest in said tract of land, either as heirs at law of their father, William Barr, or of their granduncle, William Barr, Sr., the latter being in his lifetime the fee-simple owner of the land. It is shown by the decree entered in the original cause November 17, 1891, to which reference is here made, that upon the death of William Barr, Sr., the title to said land was vested in Mary Jane Barr, subject to a life estate of Maria Bigelow therein; and that upon the death of said Mary Jane Barr on November 27, 1821, (the life estate of said Maria Bigelow being still outstanding,) the title to said lands became vested, subject to said life estate, in the brothers and sisters of said William Barr, Sr., or in the heirs of such brothers and sisters. Without going through the entire line of succession, the makers of said powers of attorney held an interest in the land which was derived or inherited from said Mary Jane Barr, and, in addition thereto, the said Robert and Samuel Barr had an interest therein as devisees of their uncle, Robert Barr, who was a brother of William Barr, Sr., the said Robert Barr having died testate on September 14, 1822, in Pennsylvania. His will was probated and recorded in Hamilton county, in February, 1884. Mrs. Martha Reed (nee Barr) died on May 18, 1883. Irvine B. Wright, after her death, executed some five or more releases of her interest in the land to different parties. From this general outline of the material facts bearing upon the questions presented for determination the conclusions of the court are as follows, viz.:

1. That all releases and conveyances made and executed by Irvine B. Wright as agent or attorney in fact after the death of Martha Reed on May 18, 1883, are void as to her heirs, and do not operate in any way to cut off the interest of such heirs in and to the parcels of land covered by or embraced in the releases made after her death. There is nothing in the evidence to take the case out of the general rule that the death of the principal is a revocation of the agency or power of attorney by operation of law, whether the fact of the principal's death be known to the agent or not when executing the supposed power. No act or acts of Mrs. Reed's heirs are established which estop them from claiming and insisting upon the benefit of this general rule. The present case is not controlled by the decision of the Ohio court of appeals in *Ish* v. *Crane*, 8 Ohio St. 520. There the guardian of the heirs had demanded and received a portion of the purchase money in this behalf. The heirs do not appear to have disaffirmed their guardian's act in so doing. The transaction was a matter *in pais*, and not by deed. Neither was it one, says the court, which of necessity had to be done in the name of the principal. In the present case there is nothing in the way of subsequent receipt of all or a portion of the considerations for the releases made after Mrs. Reed's death by her heirs. The transaction was not *in pais*. It was by deed, and had necessarily to be done in the name of the principal. The case of *Ish* v. *Crane* does not apply, and, if it did, we should feel disclined to follow its authority on the question of estoppel.

2. That, with the above exceptions, the releases executed must be held to have released and conveyed to the several grantees therein all the right, title, and interest in and to said land, which Robert Barr, Samuel Barr, Jane Chapman, and Martha Reed inherited or derived by heirship or legal and representative succession of Mary Jane Barr. Said parties in their respective suits in the court of common pleas of Hamilton county claimed their several interests in the land as heirs at law of William Barr, Sr., deceased, the original owner and holder thereof. The power of attorney was manifestly executed with the intention to authorize and empower their attorney in fact to sell and convey such interest as they had acquired by direct or representative heirship from or under William Barr, Sr. Both sides so understood the transaction. The law presumes that the constituents of said power intended that the execution of the power or conveyance made under and in pursuance thereof would pass such inherited interest in said estate as they possessed, or such as they were then asserting through the courts. Read in the light of surrounding circumstances, the expressions in the power of attorney "as heir at law of my father, William Barr, who was the son of John Barr, who was a brother and heir at law of William Barr, Sr., deceased," taken in connection with the further statement or recital following the description of the land, "being the same premises owned during his life by Wm. Barr, Sr., the granduncle of the constituents of this power of attorney," cannot properly be construed as limiting or restricting the authority or power to sell only such interest as they might have in fact directly inherited from their father, William Barr. Instead of being limitations and restrictions upon the power conferred, or descriptive of the right, title, and interest on which the power was to operate, the language employed should, upon well-settled principles, be regarded as a recital of the source of their title and interest, in order to give the instrument effect, and prevent its operating as a fraud upon those dealing with the agent. The intention was clear to vest their agent with power to sell, convey, or release some interest. It is well settled that a misdescription as to the source or origin of their title or interest will not and should not defeat a conveyance made in execution of the power. In *Dolton* v. *Cain*, 14 Wall. 474, the power of attorney authorized the agent to sell lands in Illinois "which Mr. and Madam Jacquemast at present own, and in which the said constituents have interests." The husband and wife were not owners of any lands or interests in lands. The husband alone had an interest in land, which the agent disposed of. It was contended that the power of attorney did not authorize the sale of any land or interests owned by either, but only of such as were owned by them jointly, in support of which *Dodge* v. *Hopkins*, 14 Wis. 630, was cited. But the supreme court rules otherwise, holding that it was sufficient to authorize the sale of the husband's interest. The case of *Hathaway* v. *Juneau*, 15 Wis. 262, is, however, more directly in point. It was this: Ellen F. Juneau executed to Hathaway, upon property described as "all her interest as one of the heirs of Solomon Juneau, deceased, in and to lots 7 and 8," etc., the interest which she had in the lots descendant to her as the heir of Josette

and not of Solomon Juneau. It was held by the supreme court of Wisconsin that the erroneous statement as to the origin or source of title in no way affected or invalidated the mortgage, which covered her inherited interest in the lots. It is the duty of the court to so construe instruments as to carry out the intention of parties executing them, if no legal obstacle exists; and in giving effect to the intention of the parties executing and acting upon written instruments it is proper to consider all their parts in the light of the surrounding circumstances and the situation of the parties. The court may also look to the practical construction which the parties themselves have placed upon the instrument. In the present case the power of attorney would be not only inoperative, but prove a fraud upon those dealing with the agent, if the construction counsel for cross complainants place upon the terms of the instrument should be adopted. The words therein employed, "as heir at law of my father, Wm. Barr, who was the son of John Barr, who was a brother and heir at law of Wm. Barr, Sr., deceased, who was the granduncle of the constituents" of the powers, and the original owner of the premises in which their interests were claimed, should, as contended for cross-defendants, be treated as descriptive of the pedigree of the parties executing or making the power of attorney, and of the source or origin of their title to the interests intended to be disposed of. To effectuate the clear intent to confer authority to sell their inherited interest derived from William Barr, Sr., as the original origin or source of title, the erroneous statement that they inherited such interest as heirs at law of their father, William Barr, will be discarded. Sufficient remains to authorize a sale of such inherited interest as they acquired through or under Mary Jane Barr, and that interest, under the releases executed by their agent, has been extinguished, except as to Mrs. Reed's heirs, in respect to releases and conveyances made after May 18, 1883, as indicated in the first conclusion above.

3. That the interests in the land which Robert Barr, Samuel Barr, Jane Chapman, and Martha Reed, or either of them, acquired as the devisee or devisees of Robert Barr, deceased, were not covered by or included in said power of attorney, nor were they released by the conveyances which the agent, Wright, executed under and in pursuance of the authority conferred by said powers. The interests which the constituents of said owners, as devisees, had under said will were not involved in the suits instituted in 1881. They were not intended to be, nor is there any language employed which requires that this interest should be included in the powers of sale. It is shown by S. A. Miller, John D. Gallagher, George F. Meyers, and Irvine B. Wright, the attorney in fact, that during the period of said transactions they knew of no such interest. No purchaser is shown to have dealt with the agent in respect to that interest. While that interest may have vested in 1822, upon the death of the testator, the evidence of the devisees' title under the will was not perfected until 1884,—long after the releases were executed. Until the probate and record of the will in Hamilton county, Ohio, the constituents of the power, or those of them having such interest as the

devisees of Robert Barr, deceased, could not have enforced any rights as such. They made no attempt to do so. Their contract with their attorneys did not relate to this interest, nor did said attorneys know of or undertake to represent or to recover that interest. It is manifest that the constituents of the several powers supposed they were each dealing with the same interest inherited as heirs. They did not have a common interest as devisees, and it is not to be presumed that those of them who did have such interest as devisee or devisees would have dealt with such interest on a footing of equality with the others who had no such interest, or that the latter would have included in their power interests in which they had no concern. The court has, by construction of the power, reached the conclusion that their interests as heirs of Mary Jane Barr, deceased, were properly released. The grounds upon which that construction rested could hardly be so extended as to include a separate and distinct interest in some of the constituents of the powers derived from another and different source, not by descent, but by devise. While the language employed in the powers of attorney is descriptive of pedigree and the origin and source of title, it also indicates the interests or estate on which the power was to operate, viz., such interest in the property as had descended directly or by representation from William Barr, Sr. The case comes to this: that when the powers were executed some of the constituents thereof had two separate and distinct interests. They all execute the powers to sell the interest they hold in common as heirs. Those of them having the additional interest as devisees are sought to be concluded as to such separate interest under the powers and conveyances which extinguished the common interest. Such an intention is not presumed. It must be clearly established. There is nothing in the present case to warrant the court in holding that the interests derived under the will of Robert Barr, deceased, were intended to be included in the power of sale, or that said interests were actually conveyed or have been extinguished. Counsel for cross defendants place most reliance upon the statements of Robert Barr, Samuel Barr, and Jane Chapman in relation to the will of Robert Barr, deceased, and as to the time they first learned of its provisions. These statements fall far short of establishing that the interests derived by that will were intended to be or were included in the powers of sale. On the contrary they tend to establish just the reverse. Cross defendants rest chiefly upon the proposition that the power of attorney and conveyances cover such devised interests. We think this cannot be maintained under the facts of this case, either upon principle or authority. In *Munds* v. *Cassidey*, 98 N. C. 558, 4 S. E. Rep. 353, 355, the converse of the present case was presented. It was this: A vendor conveyed "all the right, title, and interest derived by the will of the late J. C. in and to the undivided property, of whatever nature, situated in blocks 99 and 165" in a certain city. It was held that the conveyances did not pass the interest in said lots which had descended to the vendor as heir at law. The principle announced in *Burwell* v. *Snow*, 107 N. C. 82, 11 S. E. Rep. 1090, is generally to the same effect. It is also substantially laid down in

*Brown* v. *Jackson*, 3 Wheat. 449, and *Hanrick* v. *Patrick*, 119 U. S. 175, 7 Sup. Ct. Rep. 147. Our conclusion on this branch of the case is that the interests which the constituents of the powers of attorney had inherited directly or by legal representations from Mary Jane Barr fully satisfied the authority to sell or make releases; and that the interests derived by devise under the will of Robert Barr, deceased, were not included therein, and have not been extinguished or released; and that such devisees, or those succeeding to their rights, are entitled to a decree for such interest or interests. The costs of the cross suit will be divided between the cross complainants and the cross defendants holding and claiming the interests decreed the cross complainants.