Price, J.
The material facts of this case are not seriously in dispute. The first paragraph of the answer makes denial of some of the averments of the petition, but thé balance of the answer gives ,an affirmative statement of what the defendant, the Aetna Insurance Company, claims the real transactions between it, the Stambaugh-Thompson Company and The Connecticut Fire Insurance Company were, preceding the fire. ^
One V. J. Lamb, on the first day of April, 1904, and for some time prior thereto, had been a local agent for The Connecticut Fire Insurance Company, and was located in the city of Youngstown, Ohio, in which was the store and place of business of the Stambaugh-Thompson Company. Through his agency, said Insurance Company, on- the 1st day of April, 1904, issued and delivered to The Stambaugh-Thompson Company-a policy tof insurance in the sum of $3,500, covering the stock of goods and other merchandise described in the petition. There was other concurrent insurance at *152 that time of over $75,000. The premium was $30.15, but was not paid until after the fire. On or about the 29th day of April, 1904, the authority of Lamb to represent in any respect said Insurance Company was revoked, and at the time of the fire on the 21st day of May, 1904, said Lamb was not the agent • of said company, but The Stambaugh-Thompso.n Company believed that he was, and had no notice or knowledge then of the fact that his agency had been revoked. Prior to the fire, and on that day, said Lamb was the agent in said city of the Aetna Insurance Company, and had authority' to fill up blank insurance policies issued by that company, which had been signed by its proper officers and delivered to him, so that the said agent, when he desired, could fill said blanks, and when so filled and the policy countersigned by him, the same would become effective on delivery to the insured without further action on the part of the company. There is ño dispute in this court, and there was not much in the trial court, about the following prominent facts: In the forenoon of the 21st day of May, 1904, and some time preceding the fire, Lamb met Mr. Val-lance, of The Stambaugh-Thompson Company, on the street in Youngstown, not far from the store, and informed Vallance that The Connecticut Fire Insurance Company had communicated to him, Lamb, that it had more insurance in that block than it cared to carry, and that he had transferred it into another company. When asked by Vallance what company he referred to, Lamb replied, the Aetna. Vallance, who was in charge of the insurance affairs of Stambaugh-Thompson Company, expressed his satisfaction with the Aetna and di *153 rected Lamb to go to the office in the store and tell Mr. Freed, a bookkeeper there, of the arrangement, and that he should hand over to Lamb the policy issued by The Connecticut Fire Insurance Company and take in its place the policy of the Aetna Company, all of which was done. The Aetna policy was delivered and the Connecticut policy surrendered to Mr. Lamb. These policies were for the same amount and on same conditions. After Lamb had taken possession, of the Connecticut policy he left the building and when on the street, a very few minutes after leaving the store, he heard the fire alarm and soon ascertained that a fire had started in the store of The Stambaugh-Thompson Company which he had so recently left. The fire was in the rear and upper part of the building. During the progress of the conflagration Lamb, uncertain as to what course he should pursue, handed the Connecticut policy to Mr. Stambaugh, president of The Stambaugh-Thompson Company, and he retained it, as well as the policy issued by the Aetna Company. The insured company, two or three days after the fire, paid the premium on the Connecticut policy for the entire term for which it was issued, and at the same time paid the premium for the Aetna policy. The latter company returned the premium to the insured, but it was again sent to the office of Mr. Lamb, its agent. Proper proofs of loss were made to both companies, and - there is no dispute concerning them, or the amount of the loss, but each company declined-to pay it, and hence the suit under review.
It is not claimed that the fire had started at the time the policies were exchanged, nor is there any evidence to support such claim if it were .made. *154 Therefore the liability of the insurance company must be determined from its status at.that important crisis. It was not intended or understood that both policies should be binding, but that the Aetna should be a substitute for the other policy. Therefore, on the facts narrated,-is the Aetna Company liable? The answer to this question is to a large extent dependable upon the right of the insured to regard and deal with Lamb as the representative of the Connecticut Company. If the revocation of his agency in April preceding the fire was effective as to third persons who were not apprised’ of such revocation, then the transactions between Lamb and the insured prior to the fire were void, and there was no valid cancellation of the policy issued by that company. The lifting or taking up of such policy on one side and its surrender to him by the insured was of no avail. But the general rule of revocation of agency does not prevail on the facts of this case, because it is undisputed that thé Stambaugh-Thompson Company had no notice or knowledge that the agency had been revoked, and having dealt with Lamb in the placing of the Connecticut Company policy, on the 1st of April just preceding, it believed he was still its agent at the time the exchange of policies was made. Under such circumstances, and for the purposes of the exchange, the law regarded Lamb as still the representative of that company. This proposition of the law of agency is not contested, but is agreed upon as the rule that should govern this case. It is the rule recognized in Ish v. Crane et al., 8 Ohio St., 520; same parties in 13 Ohio St., 574. See also Springfield F. & M. Ins. Co. v. Davis, 37 S. W. Rep., 582; Burlington Ins. Co. v. Threlkeld, *155 60 Ark., 539; Southern Life Ins. Co. v. McCain, 96 U. S., 84. There are many other supporting authorities, but as the rule is conceded, we need not cite them.
We are now brought to the ■ question, was the Connecticut policy cancelled prior to the fire? As we have already said, it is agreed upon all hands, that both policies were not to be in force, for that would have created additional insurance' when such was not the purpose of the parties. It is earnestly urged for plaintiff in error that there was no .valid cancellation effected; that at the most, there was but a conditionál cancellation, and that statement implies that something had to be done or said -by the Connecticut Company, after the Stambaugh-Thompson Company surrendered the policy to Lamb, and that as 'nothing was said or done by the company towards the completion of a cancellation, then in fact and law none was made.
The policy contains the following provision: “This policy shall be cancelled at any time at the request of the insured; or, by the company by giving •five days’ notice of such cancellation. If this policy shall be cancelled as hereinbefore provided, or become' void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that if this policy is cancelled by this company giving notice, it shall retain only the pro rata premium.”
If the company exercises the right of cancellation it must give five .days’ notice thereof, so that the insured may procure other insurance, and until the expiration of the five days the policy is in full *156 force. On' the other hand, it is sufficient if the insured request its cancellation of the company or its agent for that purpose, and with such request delivers the policy to the company or such agent. No agreement for cancellation is necessary. If the company desires to cancel and gives the five days’ notice, it can cancel despite the protest of the insured, for his consent is not essential. No meeting of the minds is necessary, and no act on his part is necessary. And, if the insured desires a cancellation, he may request it and surrender the policy to the proper party for that purpose. Train v. The Holland Purchase Ins. Co., 62 N. Y., 598; same parties, 68 N. Y., 208.
As said by the court of appeals in Crown Point Iron Co. v. Aetna Ins. Co., 127 N. Y., 608: “While a method of terminating the insurance upon the motion of the insured is not specified, except that the insured party is to request it, the language of the contract indicates that the subject is within his control and that the terminating act is to be done by him alone, without any concurrent or supplemental act on the part of the company. * * * While it takes two to make a contract, one may end it, if the contract itself so provides.”
And again, on page 615, the same court says: “Although the language of the parties is at the ‘request’ of the insured in one instance, an on ^notice’ to the insured in the other, we think that in both it is within the power of the party desiring to end the contract to do so without either consent or action on the part of the other. When the insured surrenders the policy and requests that it be can-celled, he can do no more. Unless that ends the contract he is powerless to end it, and the company, *157 while able itself to hang on or let go as it wishes, can hold him against his will.”
We have seen in the statement of facts in the case before us, that the surrender of the Connecticut policy and the substitution of the Aetna policy was had in pursuance of an agreement between the insured and Lamb, who, as the insured believed, still represented the Connecticut Company. The very act of surrendering one policy and accepting the other in its stead implies both request and direction that the first be cancelled. The insured could go no further or do more. What marks may be put on the policy or entries made on the books of the company is a matter of its own. Regarding Lamb as the agent of the Connecticut Company, as we must do, because StambaughThompson Company believed him still to be such agent, where is there any conditional cancellation in this case? True, after the fire or near the end of its work, Lamb handed back the Connecticut policy, but that was useless, for, as already stated, the status of the insurance companies, for weal or woe, became unalterably fixed by the starting of the fire, and neither the return of that policy nor the subsequent payment of its premium by the insured changed the relations of the parties.
But another proposition is urged against the liability of the Aetna Company. It is stated on page twenty-five of brief for plaintiff in error in the following language: “If the defendant in error (The Stambaugh-Thompson Company) had the right to reject the unauthorized act (of Lamb), of which there can be no doubt, there was no legal agreement for the cancellation of the Connecticut fire insurance policy prior to the fire. If, in law, *158 the defendant in error had the right to reject the unauthorized act of Mr. Lamb, the mere fact that the Connecticut Fire Insurance Company was bound and was willing to ratify the unauthorized act of Mr. Lamb, this would • not make a valid agreement, for the reason the contract was not mutual, both parties must be bound or neither.” A very plausible argument is constructed on this proposition, and several authorities cited and quoted from to support it, such as Dodge v. Hopkins, 14 Wis., 630; Atlee et al. v. Bartholomew et al., 69 Wis., 43; Townsend et al. v. Corning, 23 Wend., 435; Mechem on Agency, and other textbooks. On page twenty-four of the same brief, counsel for plaintiff in error say: “We contend' that the defendant in error was not bound by the unauthorized act of Mr. Lamb. The defendant in error had the option, upon discovering that Mr. Lamb acted without authority for the Connecticut Fire Insurance Company to reject or ratify the un- . authorized act of Mr. Lamb, if a ratiñcation of such a contract could be had after the fire.”
It may be said, that the general rule of law embraced in the quoted statements of counsel is not disputed, but it does not control under the facts of' the present case. We must not lose sight of the principle; already stated, and upon which counsel for these contesting parties agree, that the status of the two companies' and the insured at the beginning of the fire is to be reckoned with in working out their rights. And it is more than doubtful that. a ratification or repudiation of the act of Lamb by the Connecticut Company after the fire could in any way affect its liability. At any rate, there is nothing in the record to show *159 that said company did repudiate Lamb’s acts after the fire. It is quite clear that the insured did hot repudiate' what had been done, for. it insists on holding on to the fruits of the substitution of the Aetna policy. Beyond all cavil, Lamb” was the authorized agent of the latter company at the time of the exchange of policies, and it is in no condition to reject or repudiate what Lamb did. Therefore we have no facts in this case upon which to predicate the propositions and authorities of learned counsel. His quotation from' Clark & Skyles on the Law of Agency, 372, is that “the ratification of a contract entered into by a person acting as agent, but without authority so to do, made by a person for whom he assumed to act as principal, can not validate the contract so as to bind and be in force against the other party without his consent.” This is, in substance, the doctrine of the third section of the syllabus in Atlee et al. v. Bartholomew et al., 69 Wis., 43, cited for plaintiff in error. Who is the “other party” without whose consent the ratification is of no avail in the language quoted? Certainly not the Aetna Insurance Company, but rather The StambaughThompson Company. It has not rejected the acts of Lamb, but consents, if consent can be given, that his acts shall stand, and it is now endeavoring to enforce its rights under the acts of Lamb.
And so with the case of Dodge v. Hopkins, 14 Wis., 630, and other authorities cited. In that case a land contract was involved and the following from the syllabus shows what was decided, bearing upon the subject of agency: “Where a contract for the sale of land is not binding upon the owner of the land, because made by a person who *160 assumed to act as his agent without any authority, it is not binding upon the other party. No subsequent act of the owner in ratification of the contract could make it obligatory upon the other party without his assent. If part of the purchase money was paid to the agent, the owner of the land was. at liberty to reject it, and his subsequent acceptance of it, being an act with which the other party was in no way connected, imposed no obligation on the latter until he actully assented to it.” This represents the sum and substance of all the authorities cited on the subject we are now discussing, although they are couched in different forms of expression. If we can apply the law so announced to the present case, The StambaughThompson Company — “the other party” in the legal figure, was not bound by the unauthorized acts of Lamb until it assented thereto. And it is clear here that if assent could be given after the fire, which we need not decide, it has been given and is relied upon. But if the assent could not be given after the fire it is because that event determined the relative position of the parties, and neither assent or dissent thereafter could alter their rights. The insured could then stand upon the strength which the law gives to an assumed agency on the part of Lamb upon which the insured relied in good faith.
Hence, the doctrine invoked by plaintiff in error does not give" relief.
However, it is said for plaintiff in error, in one branch of its brief, that the defendant in error, by certain acts, clearly indicated its intention to and did refuse to ratify the unauthorized acts of Lamb; and in another branch it is baldly asserted that *161 “the defendant in error could not ratify the unauthorized acts of Lamb after the fire,, and therefore there could be no ratification by the defendant in error, of the unauthorized act of Lamb.” These statements are inconsistent. If the defendant in error could not ratify Lamb’s acts after the fire, it would seem true; also, that a refusal 'or neglect to ratify after the fire would be a vain thing. The peculiar circumstance of the fire following so soon upon the heels of the exchange no doubt tended to confuse the insured — each company claiming to be exempt, and this may account for proofs of loss and payment of premiums to both.
It is further claimed that Lamb, in the transaction of negotiating an exchange of policies, was exercising a double agency, which rendered the transaction void, inasmuch as the insured knew that he was attempting to act as agent for each of the insurance companies. The plaintiff in error states its claim in the language of the court in The Empire State Ins. Co. v. American Central Ins. Co., 138 N. Y., 446, where it is said: “A person who is employed as agent by .two principals may not, without their assent, act for both in making a contract between them in a matter where he is invested with a discretion by each, and in which each is entitled to the benefit of his skill and judgment, and a contract so negotiated is void at the option of a non-assenting party.” In pur case, the agent Lamb was not engaged in making a contract between the two insurance companies — the two principals involved in the rule — nor was there any such contract made, and therefore the discretion, skill and judgment of the agent were not exercised in any contract made by him .between two *162 principals. It is not intimated that in the substitution of the Aetna for the other policy, Lamb was also acting as the agent of the insured, and we must again observe that the authorities cited do not fit the case under review, for the- agent did not make a contract between the two principals. He acted severally for each company.
But is the Aetna company in a position to claim the benefit of the rule invoked? Lamb was its agent, and having been let out of the service of the Connecticut Company he encouraged an ambition to take some of the latter’s business and give it to the former. In getting business away from another company he was acting within the scope of his authority as agent of the Aetna, although he was not instructed to use falsehood or dishonest means to obtain it. Assuming also to represent the Connecticut, as once had been his relation, he accepts a surrender of the latter’s policy and.substitutes that of the Aetna. If he prevaricated in his course of conduct with the insured, he was the prevaricator of the Aetna Company, and we are unable to see how it can evade the consequences of his act.
We find no substantial error in the judgment of the circuit court and the same is affirmed.

Judgment affirmed.

Shauck, C. J., Crew, Summers and Spear, JJ., concur.